345 So.2d 1222 (1977)
Robert C. DYSON, Jr., et al., Plaintiffs-Appellees,
v.
GULF MODULAR CORPORATION et al., Defendants-Appellants.
Evie Lee Creel DYSON, Individually and as Administratrix and Natural Tutrix of the Minors, et al., Plaintiffs-Appellees,
v.
John D. BELCHER, Jr., et al., Defendants-Appellants.
Nos. 10435, 10436.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
*1223 John W. Anthony, of Talley, Anthony, Hughes & Knight, Bogalusa, for plaintiffs in suit No. 34626-B.
John J. Cooper, of Christovich & Kearney, New Orleans, Counsel for Gulf Modular Corp., John D. Belcher and Fid. & Cas. Co.
John N. Gallaspy, of Gallaspy & Paduda, Bogalusa, for Nat. Homes Corp. and O. E. Waters.
Louis M. Kiefer, Jr. and Ethel H. Cohen, New Orleans, for Washington-St. Tammany Elec. Co-op.
A. Clayton James, Jr. and Ronald J. Brumfield, of James, Knight & Brumfield, Franklinton, for Agri-Trading Corp., and Wayne Engerran.
Donald H. Lee, of Seal, Lee, Branch & Brown, Bogalusa, for plaintiffs in suit No. 35147-A.
Before SARTAIN, ELLIS and PICKETT, JJ.
*1224 SARTAIN, Judge.
These consolidated cases are before us on remand for the purpose of reviewing quantum. See: 338 So.2d 1385 (La.1976).
Robert C. Dyson (decedent) was fatally injured on February 25, 1972 as a result of accidental electrocution. He is survived by his widow and ten children, who are the plaintiffs herein.
The trial court, in its written reasons for judgment, stated:
"With respect to the issue of quantum, this Court is of the understanding that all five minor children who are aged 8 through 16, were in foster care and were not being supported by their father.
"The father and mother were not legally separated or divorced, but had not lived together in a number of years.
"This Court understands that the purpose of fixing a monetary award in a death case is that there is no other way in which the law can compensate widows or children for the loss of their husband and father. Loss of support is taken into consideration and then loss of companionship, love and affection is taken into consideration. Where those things actually do exist and the negligence of another takes them away, the law attempts to compensate in money.
"This case does not suggest compensation, but suggests a windfall. There is nothing here to suggest that he supported his wife or children, and there is little to suggest that he did much for them in any other way. It is true that he was the only father that these children had and therefore they do have a right to recover for his loss, but the facts of this case indicate that as their loss was not great, the monetary awards should not be great. This Court will award $7500.00 to each of these five children for their loss of their father. The plaintiffs cite to this Court the recent case of Moss v. Bailey, where Judge Tanner of this Court awarded two major children, ages 19 and 21 respectively, the sum of $20,000.00 for the loss of love and affection for their father. If Moss is to be taken as a bench mark and if $20,000.00 was the figure used there, this Court would feel that under these circumstances in this case, an award of $5,000.00 to each major child would certainly be adequate. This is for the major children. The Court understands there were five major children of the decedent.
"In view of the fact that the woman was technically his widow, she has a legal right under our Civil Code. He had not supported her in years and she had not lived with the man in a number of years. This Court will not reach the conclusion that she was living in a state of concubinage with another as she steadfastly insisted that she was living with these people in the status of something of a caretaker.
"A review of all of the circumstances indicates an award to the widow of $15,000.00 would be adequate."
Pertinent to the quantum issue, defendants seek a reduction in the award of $15,000.00 to Mrs. Dyson and the plaintiffs have answered the appeal seeking an increase in the award to Mrs. Dyson to $40,000.00 and an increase in the award to each surviving son and daughter to the sum of $30,000.00.
The trial judge's statement, above, that this cause "does not suggest compensation, but suggests a windfall" is in obvious reference to the unfortunate circumstances surrounding the home and family life of the parties.
Mr. and Mrs. Dyson were married in 1948 and as stated above, had ten children. The two youngest children were girls, the eight older children were boys. In 1964, the older boys got into difficulty and as a result six of them were placed in a religious home for boys. Their stay at this home was not satisfactory and they were committed to the Louisiana Training Institute (LTI).
In 1966 the family was living on a dairy farm near Clifton, Louisiana. Mrs. Dyson was employed by the owner. Decedent was unemployed at the time but did assist his wife in the operation of the dairy. Mrs. Dyson left the home, ostensibly to go to the doctor, but did not return until a week later *1225 when she came back for her clothes and six of the younger children. On this occasion two of the older boys remained with decedent. The other two boys had been previously recommitted to and were confined in LTI.
Shortly thereafter the six children with Mrs. Dyson were removed by court order and placed in foster homes under the supervision of the Louisiana Department of Public Welfare.
At the time of Mr. Dyson's death (February 25, 1972), Mrs. Dyson was residing in the home of a Mr. Dunaway, where she received room and board for caring for his five children. The four younger Dyson children were still in foster care. The record also reflects that from 1964 until 1972 one of the sons had been recommitted to LTI on one occasion and three of the sons had been recommitted to LTI on two occasions. On the date of decedent's fatal accident, one of the sons was in Angola and another was in New Orleans on a work release program from DeQuincy.
Counsel for plaintiffs strenuously objected to the admission of any evidence tending to show the shortcomings of the Dyson boys, and their juvenile and/or criminal convictions, on the grounds that such evidence tended to degrade them and was offered for the purpose of embarrassment. They argue that such evidence in no wise diminished their love for their father or his for them. We find that the trial judge properly admitted this evidence for it does have relevance with respect to the issue of damages for loss of the love and affection that the plaintiffs had for their father.
Love and affection are by their very nature subjective and the degree of devotion one has for another is an intangible human trait which, for the purpose of compensation, must be measured by objective standards. While it is difficult to say whether this is a true measure of one's attachment to another, it remains in reality the only practical means available to our courts. Accordingly, the visible manifestations utilized to determine love and affection between a parent and child are those interactions between members of the family when tend to reflect the closeness of the family unit, the congeniality between its members, their common interests, and generally, the type of treatment and conduct which not only engenders love and affection but nurtures it to its fullest extent.
Counsel for the surviving children have cited numerous cases wherein awards were made to minor and major children for the loss of their father in sums ranging from $15,000.00 to $35,000.00, which awards include loss of future support. The facts in the cited authorities are totally inapposite to the facts in the case at bar.
We recognize that the decedent did visit his children in foster care on a fairly regular basis, once a month for an hour. However, this has been the extent of his contact with them. He was not contributing to their support nor is there any evidence that he ever did so for the six years they were in foster homes. Their total support came from the state.
With respect to the older children, he did visit them at their respective places of confinement when possible, but distance was a handicap. On several occasions he obtained employment for two of his sons. However, because of their circumstances shown above and with the exception of one son, his contacts with his children must be considered as minimal. This is not to say that decedent was totally indifferent to his children or they to him for this is not so. Nonetheless, the factors which are used to gauge the unity of a family, their respect and love for one another, etc., above, are simply not present here and we are compelled to agree with the trial judge as to the amount of these awards. They are well within the range accorded to the trier of fact. C.C. Art. 1934(3), Coco v. Winston Industries, Inc., et al., 341 So.2d 332 (La. 1976).
We now turn to Mrs. Dyson and the respective claims of the parties for an increase or reduction. Presumably, the trial judge based his award entirely on damages *1226 for loss of love and affection because in his written reasons for judgment he noted that decedent ". . . had not supported her in years . . ." If this assumption is correct, we think the trial judge erred for in our opinion we do not find that Mrs. Dyson is entitled to any award for loss of love and affection, but that she is entitled to damages for loss of support. With respect to the claim for loss of support, Mrs. Dyson testified that during the earlier years of her marriage to decedent the family was ". . happy and well provided for." However, financial matters worsened, her husband became cross and either unreasonably disciplined the children or she was overprotective of them, there was a lot of bickering, her nerves became "bad", and she ". . . felt it would be best all the way around, and mostly for the kids . . ." if she and her husband separated. The only contact between Mrs. Dyson and the decedent during this six year period occurred when decedent would stop her in front of "the courthouse" to discuss the children. Other than this statement by Mrs. Dyson, the record is totally devoid of any evidence save Mrs. Dyson's statement that she continued to love him. See: Engeron v. LeBlanc, 29 So.2d 497 (La.App. 1st Cir. 1947).
With respect to the claim for loss of support, Mrs. Dyson testified that her husband gave her an average of $60.00 per month. Accepting this statement as correct, we believe that the sum of $7500.00 for this claim will adequately compensate her. Decedent was fifty-three years of age at the time of his death. We construe his productive work life to be approximately twelve years and our award is based thereon.
Accordingly, for the above reasons, the judgment of the district court in Suit No. 10,435 is affirmed. The judgment of the trial court in Suit No. 10,436 is amended by reducing the award therein to Mrs. Evie Lee Creel Dyson from the sum of $15,000.00 to the sum of $7,500.00 and the judgment, as amended, in all other respects is affirmed. All costs of these proceedings are cast against the defendants-appellants.
JUDGMENT AFFIRMED, AMENDED, AND AS AMENDED AFFIRMED.