466 So.2d 579 (1985)
Joyce A. McQUARTERS, et al.
v.
Steven ZEGAR, et al.
No. 84-CA-463.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 1985.
Steven Scheckman, William P. Quigley, Quigley & Scheckman, and Jennifer N. Willis, R. Glenn Cater, Cater & Willis, New Orleans, for Joyce A. McQuarters, et al., plaintiffs-appellants.
Antonio E. Papale, Jr., Hailey, McNamara, Hall, Larmann & Papale, Metairie, *580 for Aetna Cas. & Sur. Co., defendant-appellee.
Jean Eve Gibert, Ward & Clesi, New Orleans, for State Farm Fire & Cas. Co. & Steven Zegar, defendants-appellees.
Before BOUTALL, CURRAULT and GAUDIN, JJ.
BOUTALL, Judge.
This is a wrongful death action arising from a shooting. From a judgment in favor of the plaintiffs, the plaintiffs appealed the amount of the award, and the defendants answered the appeal.
On November 21, 1979, William McQuarters was killed when a loaded pistol held by Steven Zegar discharged. The incident took place at the intersection of Terry Parkway and Stumpf Boulevard in Jefferson Parish, allegedly following a confrontation between the two men in the parking lot of the Oakwood Shopping Center, in which McQuarters allegedly yelled an obscenity at Zegar and pointed a pistol at him. Zegar was at that time a volunteer reserve police officer of the New Orleans Police Department but was not on an assignment, was not in uniform, and was out of Orleans Parish. After chasing McQuarters' car out of the parking lot and to the intersection of Terry Parkway and Stumpf Boulevard, he drew a pistol and ordered McQuarters to get out of the car and put his hands against the car. Shortly after Zegar's gun discharged, killing McQuarters.
The widow, Betty Jean McQuarters, and the couple's nine children filed a wrongful death action against Steven Zegar, the Mayor and Superintendent of Police of New Orleans, and the City of New Orleans, demanding damages of $1,098,714. The plaintiffs amended twice to add as defendants State Farm Fire and Casualty Company, Zegar's liability insurer, and Aetna Casualty and Surety Insurance Company, his excess liability insurer. Zegar answered with a general denial and reconvened against McQuarters for damages from the alleged assault. State Farm denied liability on the basis of policy exclusions for damages resulting from the insured's intentional acts, or occurring while he is engaged in business pursuits, or performing professional services; in the alternative it alleged that the decedent's contributory negligence barred the plaintiffs' recovery. State Farm, then, was aligned with the plaintiffs against Zegar, but under its contract was obligated to provide legal representation and hired an attorney to defend him. Aetna denied liability on grounds of McQuarters' contributory negligence and assumption of risk.
A jury trial was held on January 9, 10, 11, and 12, 1984. On January 10 a directed verdict was granted, dismissing the Mayor, Superintendent of Police, and City of New Orleans from the suit. On January 12 the jury found in favor of the plaintiffs and against State Farm and Aetna, and awarded the widow and nine children each $5,000, a total of $50,000. The judgment was amended to recognize the existence of coverage under both policies, subject to the limits of the respective policies. This appeal by the plaintiffs followed, with Zegar and State Farm filing a joint answer, and Aetna filing an answer as Zegar's excess insurer.
1. The sole issue raised by the appellants is the amount of the award: whether funeral expenses and loss of support should have been provided in addition to the awards and whether the amounts awarded were so low as to be an abuse of discretion by the trial court.
2. State Farm, Zegar, and Aetna, raise the question of whether the trial judge was correct in failing to instruct the jury on contributory negligence and assumption of risk.

Contributory Negligence and/or Assumption of Risk.
We first consider the issue of whether it was error for the trial judge to refuse the defendants' request for instructions to the jury on contributory negligence and/or assumption of risk. The judge made the *581 following remarks to counsel after closing statements:
"Insofar as the jury charge goes, in spite of the reference by counsel during the course of the trial as well as in closing argument, the various legal propositions, I have decided and have conformed my charge to what I believe the law is that applies to this case.
"As a consequence thereof, there will be no charge on contributory negligence, no charge on assumption of risk, no charge per se on any aggressor doctrine and the liability is restricted to the issue of negligence or intentional act.
"These are a result of the sequence of events which led to the incident, the remoteness of the original confrontation and the passage of time between the first and second confrontation as a result of what I feel is the absence of any evidence to support any contributory negligence which, if alleged as a defense, the burden is upon the person so alleging to prove, and they haven't done so by any stretch of the imagination."
A review of the judge's charges to the jury indicates that he restricted the possibilities to finding that Zegar intentionally shot McQuarters, that he negligently shot McQuarters or that he was guilty of neither negligent nor intentional harmful conduct.
We agree with the trial judge that the defendants failed to carry the heavy burden of proof required of a party who raises the defense of contributory negligence. Bridgewater v. State through Department of Corrections, 434 So.2d 383 (La.1983). Under the holding of Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975), this court has authority to render judgment on the merits in the event a consequential but erroneous instruction to the jury has been made. We have examined the facts carefully and find none that would justify a holding of contributory negligence or assumption of the risk. The evidence instead preponderates to the contrary, that the shooting was unprovoked and constituted gross negligence.
To begin with, there is no corroboration of McQuarters' having provoked the incident by pointing a gun at Zegar in the Oakwood Shopping Center parking lot. Even if we assume that the altercation did happen, it was too remote in time from the actual shooting to have justified Zegar's action.
Zegar testified that after McQuarters drove away from him at Oakwood he hurriedly got a pistol from the trunk of his car, where six other pistols, about 2,000 rounds of ammunition, and his police radio (in a brief case) were stored. He then drove down Terry Parkway with his headlights, flashing lights, and blue dashboard light all turned on. When he found McQuarters waiting in the left turn lane at Stumpf Boulevard he opened his car door, raised his pistol, and yelled four times, "Police officer. Get out of the car." When McQuarters got out he said, "Freeze, put your hands on top of the car." He then approached McQuarters, gun in hand, opened his police folder to show his identification card and accidentally dropped the card. When he bent down to pick it up McQuarters spun around and faced him, hands down. Zegar then kicked him in the groin. When McQuarters turned to the right, Zegar lunged to pull him back and some part of McQuarters' body hit Zegar's hand, causing the gun to go off. Zegar is a master marksman who participates in national competitions. The gun he was using had been altered by a gunsmith to have a lighter trigger pull and was loaded with exploding bullets. Zegar admitted having exchanged the bullets remaining for standard police department issue right after the shooting.
Three witnesses testified to having seen the incident. While there were variations in details their stories were in agreement that there was no struggle and McQuarters made no sudden moves before Zegar kicked him and the gun went off. All three heard Zegar yell for McQuarters to get out of the car but did not hear him shout, "Police." We do not believe that McQuarters assumed the risk by resisting arrest.
*582 The court is required by La.C.C.P. 1792(B) to "instruct the jurors on the law applicable to the cause submitted to them." He need not give all the law that is available on the subject matter involved but rather all that pertains to the case before the jury. Aguillard v. Lake Charles Stevedores, Inc., 284 So.2d 124 (La.App. 3rd Cir.1973), writ refused 286 So.2d 663 (La. 1973).

Quantum.
The couple had separated sometime in either 1972 or 1973, and Mrs. McQuarters moved to Oakland shortly thereafter, taking all nine children with her. Her testimony is vague as to the reasons for separating except that she wanted to do something else with her life and further her education. No legal steps were taken, and, according to her testimony, McQuarters sent her money on a regular basis voluntarily. She was also receiving welfare before his death.
The awards as set out by the jury verdict were as follows:

"In favor of Betty A. McQuarters
 [wife] $5,000.00
In favor of Avery McQuarters, age
 25, son $5,000.00
In favor of son, Orlando, age 24 $5,000.00
In favor of daughter, Joyce, age 22 $5,000.00
In favor of son, Elton, age 22 $5,000.00
In favor of daughter, Wilma, age 20 $5,000.00
In favor of son, Byron, age 18 $5,000.00
In favor of son, Darryl, age 15 $5,000.00
In favor of daughter Athelia, age 15 $5,000.00
In favor of daughter Sherlita
 (Nicole) age 11 $5,000.00"

The plaintiffs assume that each of the undifferentiated awards represents compensation for loss of love, affection, and companionship. Besides arguing that those amounts are so low as to amount to an abuse of discretion, they protest the omission of past and future support and of funeral expenses. State Farm and Zegar find the quantum to be, if anything, excessive, while Aetna argues that the damages are more than sufficient and the judgment should not be disturbed. All the appellees raise the problem of proof as to support and payment of the funeral bill, and, further, would deny any increased award for general damages because the wife and children were living separate and apart from McQuarters, with only occasional person-to-person contact.
Betty McQuarters, the widow, and six of the children testified. She said that she and McQuarters were on friendly terms, she saw him whenever she came to Louisiana, that they talked long distance frequently, he wrote twice a month, and some of the children visited him every year. All six children said that their daddy was good to them and sent them anything they needed, they loved him and his death was a shock. Each had visited him at least twice for varying lengths of time, and he had visited them in California once.
The elements of damage to be recovered in a wrongful death action are loss of love, affection, and companionship, loss of support, and funeral expenses. A plaintiff must show prior actual support in order to be compensated for its loss. Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir.1983).
No proof was submitted by Mrs. McQuarters for support from her husband. She testified that she filed no income tax returns, but McQuarters carried several of the children as dependents on his return. She received money from him either by money order or wire but kept no receipts or records. She did not use a checking account and kept a savings account only briefly. She testified to receiving varying amounts of support and estimated the total to be $8,000 to $9,000 per year. The personnel records of McQuarters were admitted into evidence, providing payroll information from 1967 through 1979. McQuarters had earned gross wages of $18,725.97 for 1979 as of the date he died, November 21. When asked about the funeral bill, Mrs. McQuarters stated that she paid it and it was about $2500, again submitting no documentary proof. We believe that the jury discounted Mrs. McQuarters' estimate of money received from her husband, as it represented an unrealistic proportion *583 of his take-home pay. We presume that the jury included an allowance toward the funeral bill in the undifferentiated award of $5,000 to Mrs. McQuarters. In light of her voluntary removal from the marital domicile and the absence of any evidence of support other than her self-serving testimony, we see no reason to disturb the jury's award to her. Accordingly, that part of the judgment is affirmed.
The jury appears to have underestimated the effect upon the children of the loss of their father. Nothing in the testimony suggests that they had no love and affection for him, although they were removed from daily contact with him. We find that the award of $5,000 to each child is so low as to be an abuse of the discretion of the jury and is clearly wrong. Under Louisiana jurisprudence, where the appellate court has found an award to be clearly erroneous, it may raise the award to the lowest point which is reasonably within its discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), and cases cited therein. There are few recent cases for comparison with ours, where the children were living a long distance from the parent who died. Of the cases examined Dyson v. Gulf Modular Corp., 345 So.2d 1222 (La.App. 1st Cir.1977), appears to be the closest factually, as the parents lived apart, the children had been placed in foster homes and the father had maintained intermittent contact with the children. In that case the court awarded $7,500 to each child for loss of love and affection. In other cases, where the family was intact the awards ranged from $10,000 to $100,000 per child. After consideration of all of the factors in the case before us and prior awards for loss of a father's love, affection, and guidance, we amend the judgment to award $10,000 to each of the nine McQuarters children.
For the reasons stated above we amend and recast the judgment to read as follows:
"It Is Ordered, Adjudged And Decreed that there be judgment in favor of plaintiffs, Betty A. McQuarters, individually, and as Natural Tutrix of her three minor children, Darryl McQuarters, Athelia McQuarters and Sherlita (Nicole) McQuarters, and Avery McQuarters, Orlando McQuarters, Joyce McQuarters, Elton McQuarters, Wilma McQuarters and Byron McQuarters and against defendants, State Farm Fire & Casualty Company and Aetna Casualty & Surety Company recognizing the existence of coverage under their respective policies of insurance issued to defendant, Zegar, subject to the limits of the respective policies.
"It Is Further Ordered, Adjudged And Decreed that there be judgment herein in favor of the plaintiffs in the following sums:

Betty A. McQuarters $ 5,000.00
Avery McQuarters 10,000.00
Orlando McQuarters 10,000.00
Joyce McQuarters 10,000.00
Elton McQuarters 10,000.00
Wilma McQuarters 10,000.00
Byron McQuarters 10,000.00
Betty McQuarters in her capacity as
 natural tutrix of her minor child,
 Darryl McQuarters 10,000.00
Betty McQuarters in her capacity as
 natural tutrix of her minor child,
 Athelia McQuarters 10,000.00
Betty McQuarters in her capacity as
 natural tutrix of her minor child,
 Sherlita (Nicole) McQuarters 10,000.00

and against the defendant Zegar in solido with his insurer, State Farm Fire & Casualty Company, up to the amount of its policy limits of $50,000.00, and against the defendant Zegar in solido with his excess insurer Aetna Casualty & Surety Company in the amount of $40,000.00, together with legal interest on each sum from date of judicial demand until paid, plus all costs including jury expenses." In all other respects the judgment appealed from is affirmed.
Accordingly, the judgment appealed from is amended and recast and, as amended and recast, affirmed.
AMENDED AND RECAST, AND AS AMENDED AND RECAST, AFFIRMED.