550 So.2d 366 (1989)
Marsha Jan Schoth MALMAY, Plaintiff-Appellee,
v.
SENTRY INSURANCE COMPANY, et al. (Robert LaCombe, Defendant-Appellant).
No. 86-878.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
Rehearing Denied November 7, 1989.
*367 A.J. Gregory, Natchitoches, for plaintiff-appellee.
Stafford, Stewart & Potter, Larry A. Stewart, Alexandria, for defendant-appellant.
Thomas O. Wells, Alexandria, for intervenor-appellee.
Before STOKER, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
After having been removed to the United States District Court, the main demand in this appeal has now been remanded to us for consideration.
Defendant, Robert LaCombe, appeals the district court judgment awarding damages for the wrongful death of Larry Malmay, Marsha Jan Malmay's husband and the father of their three children. Defendant presents six specifications of error. We will discuss the issue of liability first, then we will discuss the remaining five specifications in the order presented in defendant's brief.

I.

Liability
The accident occurred on June 7, 1985, on Louisiana Highway 120 near Zwolle, Louisiana. Robert LaCombe was driving his car accompanied by Chris McGraw, Ervin Cutright and Larry Malmay. LaCombe's car ran off the right shoulder of the road then skidded across the highway. The car rolled over and at some point Malmay and Cutright were ejected from the vehicle. Malmay was killed.
Malmay's survivors and the other two survivors filed separate suits which subsequently were consolidated. Sentry Insurance Company, the public liability insurer of LaCombe, deposited its policy limits in the Registry of the Court invoking a separate concursus proceeding. After the trial court granted a motion to sever, the Malmay case went to trial. Judgment was *368 rendered in favor of Jan Malmay, the surviving spouse, for $812,188.50; for the benefit of the minor Bridget Malmay judgment was rendered in the sum of $331,258.57; for the benefit of the minor Amber Malmay, in the sum of $536,133.97, and for the minor Marsha Malmay, in the sum of $269,795.95. In this judgment the liability of Sentry Insurance Company was limited to a pro rata portion, to be determined later, of its total deposit of $529,834 in the court registry in the concursus. It is from this judgment and these awards that LaCombe perfects his appeal.
It is assigned as error that the judge found the negligence of Robert LaCombe the sole and proximate cause of Malmay's death. Specifically, LaCombe argues that the only basis of his liability was his alleged excessive speed, and that the only evidence introduced to prove the excessive speed was hearsay testimony. This testimony consisted of statements made by LaCombe to the state trooper and to a witness named Lamar Veuleman.
State Trooper Lee Isgitt testified that LaCombe told him he was driving too fast and hit the curve too fast. Mr. Veuleman testified that LaCombe came back to the scene of the wreck on Sunday, and when asked how fast he was going LaCombe told him he was going 70 miles an hour. LaCombe did not testify at the trial.
The statements made by LaCombe to the state trooper and Veuleman were non-hearsay and were admissible. The statements are a party's admissions, now covered by La.C.E. art. 801(D)(2). See also Soverign Ins. Co. v. Texas Pipeline Co., 470 So.2d 969 (La.App. 1st Cir.1985), modified, 488 So.2d 982 (La.1986). The trial court did not commit error in admitting the statements into evidence.
Liability for the accident was proved.

II.

The Denial of a Continuance
The Malmay suit was filed one month after the accident, and the trial took place six months later. The defendant filed a motion for a continuance on January 6, 1986, and the motion was heard and denied on January 10, 1986, the scheduled trial date. On this appeal LaCombe urges that the trial court erred in denying a continuance for three reasons: (1) defendant was not given adequate time to complete discovery, (2) criminal proceedings were pending against LaCombe, and (3) defendant would be subjected to more than one excess judgment suit.
It is contended that the Malmays did not disclose the names of their two expert witnesses until five days before the trial, and that this allowed insufficient time to complete discovery and prepare an adequate defense.
La.C.C.P. art. 1601 provides that a continuance may be granted in any case if there is good ground therefor. It is well established in our jurisprudence that a trial judge has wide discretion in acting upon a motion for continuance. His ruling will not be disturbed on appeal in the absence of a clear showing of abuse of that discretion. Dubea v. State, Louisiana Department of Corrections, 465 So.2d 245 (La.App. 3d Cir. 1985). Weighed against the possibility of injustice, unfairness and inequity which might result from a premature trial, is the effect that a continuance might have on the administration of justice, including congested court dockets, and just as important, a defendant's corollary right to have serious charges against him judicially resolved within a reasonable time. Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3d Cir.1975), writs refused, 329 So.2d 458 (La. 1976).
The original defendants were granted one motion for a continuance in November 1985. In answers to interrogatories mailed on January 2, 1986, plaintiffs named two expert witnesses, Ms. Barbara Anderson, a psychologist, who was to testify concerning the psychological problems of one of the minor children, Marsha Malmay, as a result of the death of her father, and Dr. Earl Thames, an expert in the field of economics, who was to testify as to the economic loss of the family of the deceased.
At trial LaCombe argued for a continuance based only on the late disclosure of *369 the expert Barbara Anderson. The trial court denied the motion for continuance but allowed defendant 30 days to obtain and submit rebuttal evidence of the psychologist's testimony. Although this testimony was not obtained until more than 30 days after the recess, the trial judge nevertheless accepted and considered the testimony. The defendant has not shown how he was prejudiced by the refusal of a second continuance based on the last minute disclosure of the name of this expert.
The second ground urged for a continuance was that criminal proceedings were pending against LaCombe stemming from the accident. It is argued that forcing LaCombe to go to trial in a civil case before the adjudication of the criminal case forced him to either risk self-incrimination in violation of his Fifth Amendment privilege or give up his defense in the civil case.
We have continuously recognized the conflict resulting from interrelated civil and criminal actions proceeding against the same defendant. A civil plaintiff's right to be compensated for his injuries without unreasonable delay provided for in the Louisiana Constitution must be weighed against the criminal defendant's rights under the Fifth Amendment. Notwithstanding the obvious complexities raised by this conflict, we have held that plaintiff's right to a civil remedy should prevail, and that the civil action need not await the finality of an interrelated criminal prosecution. Barbee v. Pigott, 398 So.2d 137 (La.App. 3d Cir.1981).
The defendant maintains that at most he needed a continuance of only two or three months but there is nothing in the record to indicate when the criminal case was to be concluded. The trial court did not err in refusing to grant a continuance for this reason.
LaCombe finally argued at trial that a denial of a continuance would subject him to multiple excess judgment suits. Whatever disadvantage resulted from exposure to multiple trials was occasioned by the granting of the motion to sever the three previously consolidated lawsuits, and not by the denial of the continuance. The severance ruling is the subject of the next specification of error, to which we now turn.

III.

The Grant of a Severance
LaCombe contends the trial court erred in granting plaintiff's motion to sever. Specifically, he argues that he was prejudiced by the denial because it subjected him to multiple suits arising from the same incident.
The claims of all plaintiffsthe Malmay widow and children, and McGraw and Cutrightwere early consolidated for trial on a motion by defendants. Subsequently, plaintiff Cutright filed a motion for a continuance because he was still under a physician's care and was not ready to go to trial. The Malmay plaintiffs opposed the effort for a continuance and filed a motion to sever.
We said in White v. Cumis Ins. Soc., 415 So.2d 574, 578 (La.App. 3d Cir.1982), writ denied, 420 So.2d 164 (La.1982):
The court does have authority to order a separate trial of even properly cumulated actions at any time prior to trial, where it would simplify the proceedings, permit a more orderly disposition of the case, or otherwise would be in the interest of justice. See LSA-C.C.P. Article 465. The decision to sever or not is within the sound discretion of the trial court, but he may grant the motion only if he finds that the case falls within the scope of the code article. Johnson v. Marvin Cutrer Contractor, 348 So.2d 1256 (La.App. 2d Cir.1977).
The trial court granted Cutright's motion to sever without assigning reasons. From his knowledge of the case the trial judge may have foreseen that there would be little evidence presented by the defense on the issue of liability (no affirmative defenses were pleaded), and that on the issue of damages the case of the Malmays was distinct from that of Cutright and the other claimant, and that the three sets of plaintiffs would present no common evidence.
*370 The considerations of judicial efficiency and economy having all three cases heard at one time will normally suggest consolidation. In the present case, although all claims arose out of the same accident, only the issue of liability rested on the same evidence, and that issue was not seriously contested. All other issues related to quantum, and the three claims were essentially separate cases. In the interest of justice a trial judge has the authority to order separate trials of cumulated actions. La.C.C.P. art. 465. Under the circumstances of this case we cannot say that the severance operated to the defendants' prejudice to such a degree that it was improper.

IV.

The Expert Witness Testimony
Defendant maintains that the trial court erred in admitting the testimony of the Malmays' economic expert, Dr. Earl Thames. Specifically, he complains that Dr. Thames testified to conclusions based on facts which were not admitted into evidence or substantiated by the record.
Dr. Thames testified to the economic losses of the widow and minor children as a result of the death of the deceased. At the beginning of Dr. Thames testimony, defendant objected arguing Dr. Thames was giving his opinion based on facts not in the record. The trial court ordered Dr. Thames to testify to the basis supporting his conclusions. Dr. Thames thereupon thoroughly explained all facts and sources from which he derived his findings. La. C.E. art. 705(A) states:
A. Civil cases. In a civil case, the expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.
Dr. Thames based his opinion on accounting records prepared by the deceased's accountant over a period of about a decade, income tax returns for the previous five years, and other financial records and interviews with the deceased's CPA. Although some of his material never got into the record, it was of a type reasonably relied upon by experts in the field of economic loss in forming opinions or inferences upon the subject, and as such, it need not have been admissible in evidence. La.C.E. art. 703 reads:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
Dr. Thames exhaustively stated all the facts on which he based his opinions in the record. The trial court did not err in allowing Dr. Thames to testify as to his opinion.
Defendant also argues that the award for economic losses is suspect and speculative. As we recognized in Gardiner v. Commercial Union Ins., 488 So.2d 1331, 1335 (La.App. 3d Cir.1986).
Our review of damage awards granted by the trial court is narrow. Louisiana Civil Code article 2324.1 dictates that in the assessment of damages resulting from offenses and quasi-offenses, "much discretion must be left to the judge or jury." See Wolfshohl v. Boudreaux, 482 So.2d 954 (La.App. 3rd Cir.1985). Unless the record demonstrates that the trial court abused this "much discretion," the appellate court should not disturb the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Deceased owned and operated a retail liquor store. Dr. Thames testified as to the economic loss of the Malmays using two approaches, the cash withdrawal plan and the cash percentage plan. Dr. Thames testified that he preferred and felt more comfortable with the figure calculated by the latter theory. The trial judge accepted this theory.
After a thorough review of the record and examination of Dr. Thames' analysis, we find the award was not speculative and *371 the record supports the trial court's award for economic losses. The trial court did not abuse its great discretion in relying on Dr. Thames' cash percentage plan calculation in awarding the Malmays a total of $1,024,377.06.

V.

The Claimed Prematurity of the Quantum Judgment
LaCombe argues that the trial court erred in prematurely ruling on the case before considering the testimony of the defense's expert witness, Dr. Milton S. Rhea, which was filed into the record after the courtroom testimony was concluded.
At the conclusion of the trial on January 10, 1986, the trial court left the record open for 30 days for the defendant to present to the court the deposition of his expert witness. Although the record reflects the trial judge wrote his opinion February 3, 1986, his opinion was not rendered and filed until February 11, 1986, after the lapse of the 30-day period. Defendant did not take the deposition of Dr. Rhea until February 19, 1986, and did not file it into the record until March 6, 1986. We were unable to locate in the record any request for time extensions to take the deposition.
Despite the late receipt of Dr. Rhea's deposition, the trial court allowed it to be filed and reviewed it, and concluded that his original opinion was correct. The trial court fully considered the testimony of Dr. Rhea, and his decision in the case was not premature.

VI.

Quantum for Loss of Love and Affection, and Conscious Pain and Suffering
Defendant contends that the trial court erred in awarding $300,000 to the surviving spouse and $200,000 to each of the three Malmay children for loss of love and affection. In addition, he argues that the trial court erred in awarding $25,000 to the estate for deceased's pain and suffering before his death.

Loss of Love and Affection
When considering the correctness of an award for damages we either find it excessive or insufficient following Reck v. Stevens, 373 So.2d 498 (La.1979).
The Malmays enjoyed a strong and healthy marriage and family life. Larry and Jan had three children. The deceased spent much of his time devotedly with his children. The death of their husband and father was undoubtedly a heavy emotional loss to the survivors. Jan and one daughter, Marsha, had to see Ms. Anderson for counseling, and counseling was recommended for the entire family to help them cope with their grief.
The award to the surviving spouse, Jan, $300,000, was in the high range (Among the highest reported: $300,000 for loss of love and affection, Keating v. Holston's Ambulance Service, Inc., 546 So.2d 919 (La.App. 3d Cir.1989); $325,000 for loss of love, affection, and companionship, Hellmers v. Dept. of Transp. & Development, 503 So.2d 174 (La.App. 4th Cir.1987), writ denied, 505 So.2d 1141 (La.1987).) Nevertheless, under the facts and circumstances of this particular case, we do not find an abuse of discretion in the trial court's award to Mrs. Malmay.
As to the awards of $200,000 each to the three girls, however, for loss of love and affection, we do not believe that the record justifies such amounts. At the time of trial Marsha was 16, Bridget was 13 and Amber was 3. None of the three children testified at the trial. The evidence depicted a healthy and happy family relationship, but no circumstances so exceptional as to justify exceeding the range of awards for similar cases in this circuit. Under the circumstances we regard these awards as excessive, and will reduce each to $150,000, the highest amount within the judge's discretion. See Fruge v. State, Dept. of Transportation & Development, 536 So.2d 745 (La.App. 3d Cir.1988), writ denied 538 So.2d 593 (La.1989), quoting from Thomas v. State Farm Ins. Co., 499 So.2d 562, 566 (La.App. 2d Cir.1986), writ denied, 501 So.2d 213, 215 (La.1987).

*372 Conscious Pain and Suffering
If it is shown that a person is most probably unconscious when he suffers a fatal injury, the survivors are not entitled to recover for the deceased's pain and suffering.
In Farlow v. Roddy, 478 So.2d 953 (La. App. 5th Cir.1985), affirmed, 493 So.2d 592 (La.1986), the court allowed recovery for pain and suffering to the deceased prior to his death. A witness in that case testified that the deceased was lying in the road, not moving, but he was breathing "like sighs." The witness said blood pumped from his ears in rhythm with his breathing. The court held that no matter how quickly unconsciousness followed the accident, he must have suffered great pain and terror, however briefly, in contemplation of his imminent and horrible death.
In the present case, the witness Lamar Veuleman testified that the deceased was not breathing when he got to him. Veuleman put his hand on Malmay and he started to breathe, gasping for breath. The deceased was not making noises but continued to gasp for breaths for approximately thirty to forty minutes. Because the record does not clearly establish that the deceased was unconscious, we conclude that the trial court did not err in awarding conscious pain and suffering damages in the amount of $25,000.
We amend the judgment to reduce the awards to each of the three children from $200,000 to $150,000. In all other respects, the judgment is affirmed. Costs of this appeal will be divided one-half to the appellant and one-half to the appellee.
AMENDED AND AFFIRMED.