576 So.2d 1143 (1991)
Louvenia DOYLE, Plaintiff-Appellee/Appellant,
v.
PICADILLY CAFETERIAS et al., Defendants-Appellants/Appellees.
No. 89-981.
Court of Appeal of Louisiana, Third Circuit.
March 13, 1991.
*1146 James Buck, Alexandria, for plaintiff-appellant.
Percy, Smith, Foote & Honeycutt, John Honeycutt, Jr., Alexandria, for defendants-appellants.
Sooter & Foote, Victor Sooter, Provosty, Sadler & Delaunay, Ledoux Provosty, Jr., Alexandria, Stanley Hurder, Baton Rouge, for intervenor-appellee.
Lunn, Irion, Johnson, Salley & Carlisle, Brian Smith, Shreveport, for defendants Aetna Cas. and Picadilly Cafeterias.
Gist, Methvin, Hughes & Munsterman, David Hughes, Alexandria, for Fireman's Fund Ins. Co.
Before FORET, LABORDE and KNOLL, JJ.
LABORDE, Judge.
On August 1, 1985, plaintiff, Louvenia Doyle, filed suit against defendants, Picadilly Cafeterias (Picadilly), and its insurer, The Aetna Casualty and Surety Company (Aetna), for damages she sustained arising out of a slip and fall accident. Plaintiff subsequently amended her petition on May 26, 1988, naming excess insurers, United States Fire Insurance Company (United States Fire), and Fireman's Fund Insurance Company as additional defendants.[1] Defendants, Picadilly, Aetna, and United States Fire, filed third party demands in March of 1989 against health care providers, Central Louisiana Ambulatory Surgical Center, Inc., Douglas L. Gamburg, M.D., and Rayland Beurlot, M.D. On October 31, 1988, the Board of Trustees, State Employees Group Benefits Program, an agency of the State of Louisiana intervened in these proceedings, seeking reimbursement for all past and any future medical bills paid on behalf on plaintiff.
On March 17, 1989, defendants, Picadilly, Aetna, and United States Fire, filed a Joint Motion For Continuance and on March 29, 1989, defendant, United States Fire, filed a Motion and Order to Consolidate the instant case with plaintiff's medical malpractice suit. Plaintiff responded by filing on March 31, 1989, a Motion to Recall Order Allowing Third Party Demand or in the Alternative, Motion to Sever. By judgment rendered on April 6, 1989, the trial court denied defendants' Joint Motion For Continuance, severed defendants' third party demands against the health care providers from the principal demand in the instant suit (consolidating those demands with plaintiff's principal demand in her medical malpractice suit),[2] and denied defendant's Motion and Order to Consolidate. On that same date, the trial court also ruled in limine that the jury would not be permitted to assess a percentage of fault to the health care providers named as third party defendants in defendants' third party demands.
Following a jury trial, the jury rendered its verdict on April 21, 1989, finding defendant, Picadilly, at fault in causing the accident complained of by plaintiff; finding no negligence on the part of the plaintiff in causing the accident; finding that plaintiff suffered damages as a result of the accident; and finding that the accident was the cause or one of the causes of the medical treatment received by plaintiff on July 2, 1985. The jury assessed damages suffered by plaintiff for: a) past medical expenses in the amount of $368,961.69; b) physical and mental pain and suffering and physical disability, past and future, in the amount of $500,000.00; and c) future medical and other future special damages, including loss of income and earning capacity in the amount *1147 of $202,000.00. Judgment based upon the verdict in favor of plaintiff, Louvenia Doyle, and against defendants, Picadilly, Aetna, and United States Fire, was rendered and signed by the trial court on May 5, 1989. The trial court also rendered judgment awarding intervenor, Board of Trustees, State Employees Group Benefits Program, the sum of $265,010.98. From this judgment defendants, Picadilly and United States Fire, appeal. Plaintiff has also appealed and answered the appeal, seeking an increase in general damages. We affirm.

FACTS
Plaintiff, Louvenia Doyle, was injured when she slipped and fell in the women's restroom at the Picadilly cafeteria in Alexandria, Louisiana on August 3, 1984. She was fifty-two years old at the time of the accident. Plaintiff testified that as she started to walk towards an empty stall, she felt her feet slip from under her. She fell to the floor, landing first on her left knee and hitting her head on a stall door. Pamela Young was in the restroom with her daughter when the accident occurred and she testified that the floor was wet. At about the same time she was opening her stall door, Mrs. Young saw an elderly woman go "crashing to the floor." Mrs. Young stated that the woman was bleeding at the knee, her leg was scratched, and she complained of pain in her elbow and hip. Mrs. Young further testified that there were no signs warning that the floor was wet. This version of events was corroborated by her daughter, Kimberly Nolan.
Plaintiff testified that after she fell, she was assisted by a Picadilly employee who examined the area and informed her that the slippery condition of the floor had been caused by the mistaken application of a disinfectant or deodorizer. As it was Friday afternoon, plaintiff waited until Monday to contact her family physician, Dr. Wallace Reynolds. According to Dr. Reynolds, plaintiff gave him a history of slipping on a slippery spot in a Picadilly bathroom and complained of multiple injuries to both knees, left shoulder, and right thigh as well as of headaches. His examination showed that plaintiff had a decreased range of motion in her lumbar spine, tenderness in the left knee with some subpatellar effusion there. This latter finding is indicative of inflammation of the syneovial lining of the joint. Dr. Reynolds treated plaintiff's complaints of pain in her left knee with a steroid injection followed by an oral anti-inflammatory agent and pain medication.
When Dr. Reynolds saw plaintiff on October 23, 1984, she continued to complain of pain in her left knee and of headaches. He noted that she had a persistent spasm of the muscles in the back of her neck. Dr. Reynolds referred plaintiff to Dr. Douglas Gamburg, an orthopedic surgeon, to address plaintiff's problems with her knee. However, he continued to treat plaintiff on a periodic basis, and he stated that plaintiff complained of pain in her left knee, off and on, continuously from the time of her accident through July of 1985. In Dr. Reynolds' opinion, plaintiff's complaints were related to her fall on August 3, 1984.
Dr. Gamburg, whom plaintiff saw on October 31, 1984, had treated her some years earlier following her involvement in an auto accident in February of 1980. At that time, he had determined that she had osteoarthritis of her left knee with patellofemoral involvement and trochanteric bursitis of her left hip. Prior to the 1984 accident, plaintiff's last complaints to Dr. Gamburg of pain in her left knee were in June of 1981.
Plaintiff told Dr. Gamburg that she had fallen several months earlier and struck the anterior surface of her left kneecap against a hard surface. She complained of pain and swelling in the knee which was aggravated by bent knee activity such as squatting and stair climbing. At the time, his diagnosis was that plaintiff was suffering from a traumatic aggravation of pre-existing arthritis. His treatment included an injection of a cortisone preparation, Depo-Medrol, and a prescription of the pain killer, Demerol.
Plaintiff saw Dr. Gamburg again on November 14, 1984, and reported that she was doing better but still having some knee *1148 pain. At that time, he injected her with Depo-Medrol once again as well as Carbocaine, a local anesthetic, into the area of her left hip. He requested that she return to see him in three weeks. According to plaintiff, Dr. Gamburg also offered her the option of arthroscopic surgery during this visit. Dr. Gamburg did not recollect discussing arthroscopic surgery at this date. Dr. Reynolds' notes of June 17, 1985, indicate that plaintiff had informed him that Dr. Gamburg thought surgery would be necessary. Reverend Chelette, plaintiff's employer, testified that plaintiff discussed Dr. Gamburg's proposed arthroscopic surgery with him prior to her June 5, 1985 visit to Dr. Gamburg.
Although plaintiff continued to see Dr. Reynolds, she did not return to see Dr. Gamburg until June 5, 1985. She testified that her decision to temporarily discontinue her visits to Dr. Gamburg was based on the fact that she did not want to undergo surgery until her duties for the school year were completed. At the end of the school year, plaintiff again consulted Dr. Gamburg. According to Dr. Gamburg's notes, this June 5th visit was the first time that he discussed the possibility of arthroscopic surgery with plaintiff.
On July 2, 1985, Dr. Gamburg performed the arthroscopy on plaintiff's left knee. During this procedure, a staph bacteria got into the knee joint and plaintiff was readmitted to the hospital on July 7th, complaining of increased pain in her knee and running a fever. Further surgery was performed on August 5th at which time the kneecap was removed along with the infected joint lining. On September 10, 1985, Dr. Gamburg performed a fusion of the joint surfaces, leaving plaintiff with a left leg about 1½" shorter than her right leg, and which she cannot bend at the knee joint. Dr. Gamburg testified that, in his opinion, plaintiff's symptoms in June and July of 1985 were more probably due to her pre-existing arthritis than to her slip and fall.
Thereafter, on October 22, 1985, plaintiff sought relief from the continuing pain in her left knee from Dr. J. Gregory Kinnett, an orthopedic surgeon. He treated her for approximately a year. Dr. Kinnett performed a total knee arthroplasty or replacement to allow plaintiff to regain the length of her leg, eliminate pain, and address other complaints. However, plaintiff's postoperative course was significantly complicated by the fact that an area of soft tissue and skin on the upper part of her thigh died. This necessitated several more operative procedures. It was eventually determined that plaintiff had an infection in the knee and Dr. Kinnett was required to remove the components of the knee joint, leaving plaintiff with no formal joint and with bone which is not solid in the knee area.
Dr. Kinnett stated that plaintiff has osteomylitis or chronic infection of the bone. He further stated that one option is to maintain her in a brace, another is to amputate the leg just above the level of the knee and to fit the patient with a prosthetic lower extremity. Dr. Kinnett estimated that plaintiff had undergone some fourteen surgical procedures since 1985, and he also estimated that her future medical treatment would require at least a cost of around $2,000.00 a year for the remainder of her life. Dr. Kinnett opined that it was probable that plaintiff's slip and fall accident damaged articular cartilage and caused the persistent symptomatology which led to arthroscopic surgery on July 2, 1985.

ASSIGNMENTS OF ERROR
Defendants appeal the judgment of the trial court based on the following alleged errors:
(1) the trial court erred in:
(a) denying consolidation of this case with plaintiff's medical malpractice lawsuit;
(b) severing defendants' third party demands against the health care providers;
(c) consolidating defendants' third party demands with plaintiff's medical malpractice lawsuit;
(d) denying defendants' Motion in Limine requesting that the jury be permitted to assess a percentage of fault to the health *1149 care providers in causing plaintiff's injuries;
(e) and in further denying the jury any knowledge of the existence of defendants' third party demands and of plaintiff's medical malpractice lawsuit;
(2) the trial court erred in denying a named party defendant the right to representation by counsel of its choice;
(3) the trial court erred in permitting the hearsay testimony of plaintiff, plaintiff's family physician, and her minister-employer;
(4) the trial court erred in allowing one of the plaintiff's treating orthopedic physicians to testify beyond the scope of his own treatment as a "surprise expert witness";
(5) the trial court erred in allowing a witness qualified only as "an expert in the field of accounting" to render opinions outside his field of expertise;
(6) the trial court erred in:
(a) failing to give the proper instructions of the law to be applied in making a determination of causation;
(b) failing to give the jury any instruction relative to the damage awards not being subject to state and federal income taxes;
(c) failing to properly instruct the jury as to the duty of a pedestrian regarding her own safety;
(d) failing to properly instruct the jury regarding situations involving multiple injuries;
(7) the trial court erred in submitting to the jury a verdict form which omitted one of two essential elements for the determination of negligence and liability;
(8) the trial court erred in permitting plaintiff's counsel to make a prejudicial and grossly misleading argument to the jury.

SEVERANCE AND CONTINUATION OF TRIAL
Defendants first complain that the trial court committed various procedural errors which resulted in severe prejudice to them in the presentation of their case. They contend that the trial court erred in denying a continuance; in not consolidating this case with plaintiff's medical malpractice lawsuit; and in severing their third party demands and consolidating those demands with the malpractice suit.
LSA-C.C.P. art. 1601 provides that a continuance may be granted in any case if there is good ground therefor. It is well-established in our jurisprudence that a trial court has wide discretion in acting upon a motion for continuance. In the absence of a clear showing of abuse of discretion, its ruling will not be disturbed on appeal. Malmay v. Sentry Ins. Co., 550 So.2d 366 (La.App. 3rd Cir.1989). Furthermore, the trial court can order separate trials and render separate judgments on the principal and incidental demands, if it appears that fairness and orderly procedure would best be achieved by separate trials. LSA-C.C.P. art. 1038; Herb's Mach. Shop, Inc. v. John Mecom Co., 426 So.2d 762 (La.App. 3rd Cir.), writ denied, 430 So.2d 98 (La.1983). The trial court may also order separate trials of the principal and incidental demands in an effort to avoid unnecessary delay. Lowentritt v. Lowentritt, 370 So.2d 157 (La.App. 3rd Cir. 1979). Jurisprudence construing Code of Civil Procedure Article 1038 has established the rule that the trial court has much discretion in ordering separate trials of the principal and incidental actions in the interest of fairness, orderly proceedings and avoiding unnecessary delay. Lowentritt, supra.
Under these rules, we conclude that there was no abuse of discretion by the trial court. In its written reasons of April 13, 1989, the trial court noted that the medical review panel rendered a decision on December 20, 1988, and that defendants could have filed their third party demands as early as December 21, 1988. However, these demands were not filed until approximately one month prior to the scheduled trial by jury of the main demand. The trial court must have foreseen that the introduction of new witnesses, dates and events would retard the principal action and unnecessarily confuse the jury. It properly *1150 severed the third party demands and in order not to prejudice defendants' rights, consolidated those demands with plaintiff's medical malpractice suit.
The trial court also noted that plaintiff's suit against the health care providers had not been fully answered and was in no posture to be tried. Thus, it denied defendants' Motion to Consolidate plaintiff's main demand with her suit against the health care providers. In this posture, there was no need for a continuance of the main demand which had been pending for several years.
Defendants also contend as part of their first assignment of error that the trial court should have allowed the jury to consider the percentage of fault of the health care providers in causing plaintiff's injuries. We disagree. As the trial court pointed out, plaintiff has a separate cause of action (arising in tort out of her slip and fall accident) against Picadilly from her cause of action against the health care providers in her medical malpractice suit. It is well-settled that a tort-feasor is responsible for personal injuries caused by the tort-feasor's negligence, even if such injuries were aggravated by the negligent or unskillful treatment of the injured person's attending physician. Hudgens v. Mayeaux, 143 So.2d 606 (La.App. 3rd Cir. 1962); Thibodaux v. Potomac Insurance Company, 201 So.2d 159 (La.App. 1st Cir. 1967); Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d 608 (La.App. 4th Cir.1972). Thus, defendants have not shown how they were prejudiced by the trial court's ruling on this issue.
Finally, we find that the trial court acted within its discretion in not informing the jury of the existence of defendants' third party demands and of plaintiff's malpractice suit. This knowledge would only have served to needlessly confuse the jury.

THE RIGHT TO REPRESENTATION BY COUNSEL OF CHOICE
Defendants next argue that the trial court erroneously denied a named party defendant the right to representation by counsel of its choice, thereby depriving such defendant of its right of cross-examination. We disagree.
On the first day of trial, immediately following opening arguments, the trial court ruled that either counsel for Picadilly's primary insurer, Aetna, or counsel for Picadilly's excess carrier, United States Fire, would be permitted to engage in examination and cross-examination, but that both attorneys would not be allowed to examine or cross-examine each witness. In other words, the respective attorneys could confer on the questions to be addressed, but only one could do the actual questioning. We find no error in this procedure under the facts of this case, where there is no evidence that Aetna and United States Fire have conflicting interests. It is beyond dispute that the trial court has the right to control the nature, extent and character of cross-examination. Of course, it cannot deprive a litigant of the procedural right of cross-examination in the interest of judicial economy and other well-intentioned motives. Labadot v. Labadot, 328 So.2d 747 (La.App. 4th Cir.1976). We have examined the record in the instant case and find that defendants engaged in vigorous cross-examination. The trial court's ruling placed no unfair burden on the defendants but merely assured the orderly presentation of the trial.

HEARSAY
Defendants argue that the trial court erred in permitting various examples of hearsay testimony over their objections.
Hearsay is generally defined as testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein.[3] The basis for excluding hearsay is the lack of opportunity to test by cross-examination, under oath, the veracity and accuracy of *1151 the statement offered. Jones v. Ledet, 383 So.2d 1308 (La.App. 3rd Cir.1980). An out-of-court statement may be admissible as non-hearsay to prove that the out-of-court statement was made, rather than to prove the truth of the fact or facts asserted in the statement, or to illustrate the impact and consequent effect that the out-of-court statement had upon the state of mind of the listener or to illustrate the state of mind of the speaker. Buckbee v. United Gas Pipeline Co., Inc., 561 So.2d 76 (La. 1990).
In the instant case, plaintiff was permitted to testify as to what Dr. Gamburg allegedly told her regarding her need for arthroscopic surgery. This testimony implicitly contradicted Dr. Gamburg's testimony on this issue. The trial court ruled that plaintiff's testimony was admissible in order to prove simply that the statements were made. The trial court also allowed Rev. Chelette to recount what plaintiff told him regarding her need for arthroscopic surgery. It allowed this testimony not to prove the truth of the statements she made, but to show that the conversation took place. Rev. Chelette testified that during their conversation he expressed his wish to the plaintiff that, if she could, she should wait to have the surgery until after the school year was over. Finally, the trial court allowed Dr. Reynolds to recite plaintiff's statements to him concerning what Dr. Gamburg told her. It ruled that the statements were admissible among other reasons, as medical history that Dr. Reynolds took. We agree that Dr. Reynolds must have relied on this medical history in formulating his own treatment of the patient.
In reviewing the testimony complained of, we conclude that, under the circumstances of this case, it was not an abuse of the trial court's discretion to allow the testimony that it did.

"SURPRISE EXPERT WITNESS"
Defendants argue that the trial court erred in allowing Dr. Kinnett to testify beyond the limits of his own treatment of plaintiff, as they claim was previously agreed upon by the parties, thus subjecting them to undue surprise. They contend that allowing Dr. Kinnett to testify about the central factual issue in this case (i.e. the reason for plaintiff's arthroscopy) was prejudicial error.
LSA-C.C.P. art. 1631 provides, in pertinent part, that:
"The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner and to control the proceedings at the trial, so that justice is done."
Plaintiff's counsel in the instant case sought to call Dr. Kinnett to testify beyond the scope of his treatment of plaintiff. This action was based on the alleged disparity between Dr. Gamburg's deposition testimony of April 12, 1989, and his earlier testimony taken for the medical malpractice action. The trial court determined that it would review Dr. Gamburg's testimony before deciding whether to allow Dr. Kinnett's expanded testimony. The trial court allowed Dr. Kinnett to testify as an expert on any aspect within his expertise as it pertained to this case. It noted that each party had been given the opportunity to depose Dr. Kinnett, who as a treating physician of plaintiff and an expert in orthopedics, could have been examined on any matter within his expertise. It also noted that defendants had the right to recall Dr. Gamburg to rebut Dr. Kinnett's testimony if they so desired. The trial court also permitted defendants to question Dr. Kinnett prior to his testimony at trial. Under these facts and circumstances, we believe that defendants had the opportunity to properly prepare their cross-examination of this witness and to call rebuttal witnesses if deemed necessary; in other words to prepare a proper defense.
Nor do we agree with the defendants that allowing Dr. Kinnett to testify about the central factual issue in the case, (i.e. the reason why the arthroscopy was performed,) constitutes prejudicial error. We note that testimony in the form of an inference or opinion otherwise admissible is not to be excluded solely because it *1152 embraces an ultimate factual issue to be decided by the trier of fact. Its probative value must not be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Schwamb v. Delta Airlines, Inc., 516 So.2d 452 (La. App. 1st Cir.1987), writ denied, 520 So.2d 750 (La.1988). Also, we note that the trial court has much discretion in determining the admissibility of expert testimony and its judgment will not be disturbed on appeal unless manifestly erroneous. Schwamb, supra. Accordingly, we find that the trial court was within its discretion in allowing the testimony at issue.

EXPERT WITNESS TESTIMONY
Defendants contend that the trial court erred in allowing plaintiff's expert witness to render opinions outside his field of expertise. Specifically, they complain that Mr. Curt Oestricher, a certified public accountant, lacked sufficient expertise to testify as to projections he made concerning plaintiff's lost future wages and future medical expenses. We disagree.
The decision to qualify a witness as an expert is in the discretion of the trial court and will not be disturbed absent an abuse of that discretion. Hebert v. Belk Const. Co., Inc., 499 So.2d 1079 (La.App. 3rd Cir.), writ denied, 501 So.2d 198 (La.1986). We find no abuse of discretion in the trial court's ruling accepting the witness as an expert in the field of accounting. Nor do we find that the trial court erred in allowing Mr. Oestricher to testify as to projected lost future earnings and future medical expenses. Mr. Oestricher explained all the underlying facts and assumptions on which he based his opinions and he also explained the basis of his calculations. Defendant's expert witness, an economist, Dr. James Barbour, vigorously challenged Mr. Oestricher's assumptions and conclusions. The credibility of this testimony as against that of plaintiff's expert was a matter for the jury to weigh. We accordingly find no merit in this assignment of error.

JURY INSTRUCTIONS
Defendants next complain that the trial court erroneously instructed the jury by: (1) failing to give the proper instructions of the law to be used in making a determination of causation; (2) failing to give the jury any instruction relative to the damage awards not being subject to state and federal income taxes; (3) failing to properly instruct the jury as to the duty of a pedestrian for her own safety; and (4) failing to properly instruct the jury regarding situations involving multiple injuries.
Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. The adequacy of jury instructions must be determined in light of the jury instructions as a whole. Evangeline Farmers Cooperative v. Fontenot, 565 So.2d 1040 (La.App. 3rd Cir.1990); Kaplan v. Missouri-Pacific Railroad Co., 409 So.2d 298 (La.App. 3rd Cir.1981). The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; he must, however, correctly charge the jury. Oatis v. Catalytic, Inc., 433 So.2d 328 (La.App. 3rd Cir.), writ denied, 441 So.2d 210, 215 (La.1983). An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5th Cir.), writ denied, 434 So.2d 1097 (La.1983).
Defendants complain that the trial court refused two proposed jury instructions regarding causation. The trial court determined that its charge to the jury adequately addressed the substance of defendants' proposed jury instructions. It also noted that one of the requested charges would unnecessarily confuse the jury. We have examined defendants' jury instructions and reviewed the trial court's charge to the jury with respect to this issue and find it to be adequate. The trial court explained to the jury that plaintiff had the burden of proving by a preponderance of the evidence that she suffered damages which were caused by the accident and that she could only recover for those damages which were the direct and natural consequence *1153 of the accident. It also explained that plaintiff had the burden of proving that the accident did in fact aggravate or affect her pre-existing condition and that she was not entitled to recover damages for that portion of her claim if the jury found that her prior condition was not affected by the accident, or that her condition was due to the natural and normal progression of her pre-existing condition.
We also reject defendants' argument that the trial court erred in not instructing the jury that a damage award for personal injuries is not subject to federal or state income taxes. We do not find this to be a mandatory instruction which if not given constitutes prejudicial error.
Finally, we find no merit in defendants' final two contentions regarding the jury instructions. The trial court instructed the jury that plaintiff has a duty to observe those risks which an ordinary prudent person would observe under the same circumstances and is at fault if she fails to use reasonable care for her own safety. The trial court's charge to the jury adequately encompasses defendant's proposed jury instruction as to the duty of a pedestrian. We also find that the trial court did not err in refusing to read defendants' requested charge on multiple accidents. The trial court adequately addressed the issue of the liability of the tort-feasor in its instructions to the jury.

VERDICT FORM
Defendants also complain that the verdict form submitted to the jury by the trial court omitted to instruct the jury on whether plaintiff's injuries were attributable and caused by Picadilly.
If the trial court submits a verdict form to the jury with misleading or confusing interrogatories, just as when it omits to instruct the jury on any applicable essential legal principles, such interrogatories do not adequately set forth the issues to be decided by the jury and may constitute reversible error. The manifest error standard of appellate review may not be ignored unless the proposed jury interrogatories are so inadequate or incorrect as to preclude the jury from reaching a verdict based on the law and the facts. Lewis v. Wal-Mart Stores, Inc., 546 So.2d 267 (La.App. 3rd Cir.1989).
In the instant case, the trial court submitted a verdict form to the jury with the following interrogatories:
1) Was Picadilly Cafeteria at fault in causing the accident?
 YES_________ NO_________
2) Was Louvenia Doyle at fault in causing the accident?
 YES_________ NO_________
3) If your answer to both 1 and 2 is "YES", then you must find what percentage
 of fault is attributable to Picadilly Cafeterias and to Louvenia Doyle in
 causing the accident. The total percentage assigned to both must equal
 100%.
 a) Percentage of fault of Picadilly Cafeterias ______
 b) Percentage of fault of Louvenia Doyle ______
 TOTAL 100%
4) Did Louvenia Doyle suffer damages as a result of the accident?
 YES__________ NO__________
5) Was the accident the cause or one of the causes of the medical treatment Mrs.
 Doyle received July 2, 1985?
 YES__________ NO__________
6) What is the amount, if any, of damages suffered by Mrs. Doyle for:
 a) Past medical expenses $________
 b) Physical & mental pain & suffering &
 physical disability, past and future $________
*1154
 c) Future medical expenses, and other past
 and future special damages, including
 loss of income and earning capacity $________
We disagree with defendants' contention that the verdict form submitted by the trial court did not give the jury the opportunity to determine if Picadilly's negligence was the cause of plaintiff's injuries. The jury answered the verdict form, determining that Picadilly was solely at fault in causing the accident, that plaintiff suffered damages as a result of the accident, and that the accident caused or was one of the causes of plaintiff's July 2, 1985 arthroscopic medical treatment. Thus, we do not find that the verdict form given by the trial court to the jury contains interrogatories which are so incorrect or inadequate as to have precluded the jury from reaching a verdict based on the law and facts.

PREJUDICIAL ARGUMENT
Defendants complain that the trial court allowed counsel for the plaintiff to make a prejudicial argument to the jury and then failed to instruct the jury regarding it.
Attorneys have great latitude in arguing before a jury. However, they are subject to the control and regulation by the court whose duty it is to confine argument within proper bounds. Unless the contrary is clearly shown on appeal, the ruling of the trial court with regard to allegedly prejudicial improper argument by counsel is presumed to be within its discretion. Luquette v. Bouillion, 184 So.2d 766 (La.App. 3rd Cir.1966). We have examined the remarks complained of: "This is Mrs. Doyle's only day. Her last day. Her only case...." and we conclude that defendant has not shown that these remarks prevented the jury from making a fair and unbiased decision as to liability and damages. Accordingly, we find no error on the part of the trial court regarding this issue.

PLAINTIFF'S APPEAL AND ANSWER TO APPEAL
Plaintiff has appealed and answered defendants' appeal requesting an increase in her general damage award from $500,000.00 to $1,000,000.00. Our review of damage awards granted by the trier of fact is narrow. The reviewing court should not disturb the trier's award absent an abuse of discretion. Trahan v. Thomas, 544 So.2d 695 (La.App. 3rd Cir.1989). In determining whether the trier of fact has abused its discretion in its award, the appellate court must look first to the individual circumstances of the case before it, rather than to prior awards. Reck v. Stevens, 373 So.2d 498 (La.1979). After carefully examining the record and considering the medical evidence a whole, we cannot say that plaintiff's general damage award was inadequate.
The last issue is whether defendants' appeal is frivolous. Appeals are favored in our law. We are reluctant to grant damages for a frivolous appeal unless it manifestly appears that the appeal was taken solely for the purpose of delay or that appealing counsel does not seriously believe in the position he is advocating. Bellard v. Safeway Ins. Co., 442 So.2d 1314 (La.App. 3rd Cir.1983). In the instant case, in light of the standard set out above, we cannot say that penalties for frivolous appeal are clearly due here.
For the foregoing and above assigned reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by the defendants.
AFFIRMED.
NOTES
[1] Plaintiff also filed a separate medical malpractice lawsuit naming as defendants, health care providers, Dr. Douglas L. Gamburg, Dr. Rayland Beurlot, and Central Louisiana Ambulatory Surgical Center, Inc.
[2] On July 25, 1989, defendants' claims against Central Louisiana Ambulatory Surgical Center, Inc., Dr. Douglas Gamburg and Dr. Rayland Beurlot were dismissed without prejudice.
[3] We note that this case commenced prior to the effective date of the Louisiana Code of Evidence with the filing of plaintiff's petition on August 1, 1985, and is thus governed by pre-codal statutes and jurisprudence on the admissibility of hearsay testimony.