611 So.2d 805 (1992)
Hattie D. GUNN, et al., Plaintiff-Appellee,
v.
AMICA MUTUAL INSURANCE CO., et al., Defendants-Appellants.
No. 90-1272.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1992.
Writ Denied March 12, 1993.
*806 Wilbert Saucier, Jr., Pineville, for plaintiff/appellee.
Eugene R. Groves, Baton Rouge and Grove Stafford, Jr., Alexandria, for defendants/appellants.
*807 Before: STOKER and YELVERTON, JJ., and PATIN[*], J. Pro Tem.
JOHN A. PATIN, Judge Pro Tem.
This case was previously before us on an appeal by defendants, Richard Hare and Amica Mutual Insurance Co. At that time we ruled the trial court erred in omitting a jury charge regarding the sudden emergency defense and reversed and remanded for new trial under authority of Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980).
Writs were taken and granted by the Louisiana Supreme Court. The court ordered our judgment vacated and remanded to us for reconsideration of our holding regarding the jury instructions and, if our holding was unchanged, for decision of the case based on the record before us. 604 So.2d 957, 604 So.2d 958.
This case arises from an accident which occurred on March 16, 1988 on a four lane portion of Louisiana Highway 28 in Pineville. The defendant, Richard Hare, was travelling in the innermost westbound lane and Gunn was travelling in the innermost eastbound lane, when Hare's vehicle crossed the double yellow dividing line and collided with Gunn's vehicle. Only one other person witnessed the accident, Peggy McCain, who happened to see the accident from her position as drive-in bank teller at the bank on the south side of the highway.
It is not contested that Hare crossed the double yellow line and struck Gunn. However, Hare asserts he was forced to swerve into Gunn's path by the negligent actions of another, unknown, vehicle. He alleges this unknown vehicle swerved into his path and created a sudden emergency to which he reacted by unfortunately driving his car into Gunn's lane of traffic.
The Louisiana Supreme Court has ordered us to reconsider our holding regarding the erroneous omission of a jury instruction on the sudden emergency doctrine. The order states that we should make our reconsideration in light of Simon v. Ford Motor Co., 282 So.2d 126 (La.1973). The relevant language in Simon pertains to the burden of proof necessary to exculpate a defendant whose vehicle has collided with that of another in the other's lane of traffic.
When we previously entertained this case, we held that the trial judge improperly omitted a jury charge on the sudden emergency doctrine. Our reasoning was based in part on the harsh language used by the trial judge in detailing the burden of proof necessary for the defendant to exonerate himself. Our brethren on the higher court now call our attention to the language in Simon and its almost verbatim reproduction in the jury charge we found questionable. While we do not doubt the correctness of the language, absent a charge explaining the sudden emergency defense, it makes it virtually impossible for the defendant to exculpate himself. It is the absence of the charge on sudden emergency that we found, and still find, constitutes reversible error.
The trial judge's charge stated that the defendant must prove "his presence in the wrong lane of traffic occurred without any negligence, however slight, on his part." The only way Hare could have done so in the present case is by showing he reacted to a sudden emergency caused by the alleged unknown vehicle. However, no instruction was given to the jury defining "sudden emergency" and, more importantly, the jury was not informed that a sudden emergency could excuse Hare from action that might otherwise be considered negligence.
Counsel for Hare attempted to have the trial judge read a charge on sudden emergency taken from Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972). He objected to the instruction the trial judge planned to give and was assured a proper sudden emergency charge would be given, but it never was.
*808 The standard of appellate review is a comparison of the degree of error with the jury instructions as a whole, and the circumstances of the case. Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3d Cir.1991). The instructions must provide a correct principle of law and point out, clearly and reasonably, the issues presented. Doyle, supra, citing Evangeline Farmers Cooperative v. Fontenot, 565 So.2d 1040 (La.App. 3d Cir.1990). The trial judge omitted a charge explaining the doctrine comprising Hare's main defense. The omission is made all the more glaring when considered in light of the jury instructions given, and we find it to be reversible error.
As ordered by the Louisiana Supreme Court, we must follow Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Gonzales dictates we disregard the jury decision, undertake a de novo review of the record and implement our own judgment.
It is well documented now that Hare maintains an unknown vehicle cut so quickly into his lane of traffic, from the outside westbound lane, that he jerked his car to the left to avoid a collision with it and instead hit Gunn. He claims he reacted the way he did because he feared a collision with the unknown vehicle would have resulted in serious injury for its driver. It is this scenario that he claims constitutes a sudden emergency and relieves him of liability.
In order for us to even reach the question of sudden emergency, we must find an unknown vehicle existed. The only two people who claim to have seen it are Hare and Peggy McCain, the bank teller. McCain testified that she witnessed the whole occurrence. She stated that an unidentified red car was stopping to turn in the bank parking lot from the outside eastbound lane. She testified she saw the unknown vehicle following too close behind the red car and that it would be unable to stop in time. She claims she saw it accelerate, quickly change lanes, and in doing so veer in front of Hare.
Hare's testimony is similar, in that he states he was travelling in the innermost eastbound lane at approximately twenty miles per hour when the unknown vehicle crossed into his lane. He stated he was so close that he feared he would strike the vehicle broadside and kill its driver. He stated the car was mid-size and two tone, red and cream, in color. He claims he had no time to react in any other way than as he did.
Gunn testified that she was not aware of any problem in the opposite lane until she saw Hare cross into her lane. She said she did not see any car force Hare over, but that she was not paying any particular attention to that lane. She stated that after the accident occurred Hare approached her car, asked if she was injured and if she had seen that someone had forced him over.
Much was made during the trial of the discrepancies between the testimonies of Hare, McCain, the expert in traffic engineering, Dwayne Evans, and the officer who worked the accident, James Gremillion. Plaintiff's counsel sought to discredit the testimony of McCain in particular, implying that she could not have possibly seen what she claimed from her position in the bank. He also sought to have Evans conclude that the accident could not have possibly happened the way the other witnesses described it.
Several misstatements and inconsistencies in the testimony do exist. However, we recognize the difficulty two individuals have in accurately describing and relating the same witnessed event. Hare and McCain described the unknown vehicle differently. McCain described details of the accident other witnesses testified she could not have seen. However, we find no motive for untruth on the part of McCain. She did not know either party prior to the accident, and nothing was brought to light to convince us she would show favor to either party. We believe the testimony of all the witnesses, when considered in totality, fairly recreate the accident. Consequently, based on our review of the record, we find that an unknown vehicle was involved.
*809 Having found an unknown vehicle existed, we turn to the question of whether or not it created a sudden emergency. We find it helpful to use this court's language describing the sudden emergency doctrine in McCann v. State Farm Mutual Automobile Insurance Co., 483 So.2d 205 at 211 (La.App. 3d Cir.1986), writ denied 486 So.2d 734 (La.1986):
One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, as long as he has acted in a reasonably prudent manner once confronted, and, unless the emergency was brought about by his own negligence. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972) (other citations omitted).
It is incumbent upon Hare to show that the situation caused by the unknown vehicle constituted a "sudden emergency" and that swerving across the double yellow line was a reasonably prudent action under the circumstances.
From the record and testimony, we find that Hare was not in a situation of imminent peril. The testimony does not support Hare's claim that the prospective collision with the unknown vehicle was life threatening. As the testimony of the traffic engineering expert detailed, a collision with another vehicle travelling at approximately the same speed, which Hare claimed was twenty miles per hour, and in the same direction, is nowhere near as potentially hazardous as a head-on collision. We recognize the necessity of a quick decision on Hare's part, but cannot totally relieve him of fault because his actions were not reasonably prudent under the circumstances.
Hare argues the similarity of this case with Murjani v. Thibeaux, 521 So.2d 1225 (La.App. 3d Cir.1988), writ denied, 526 So.2d 800 (La.1988). In Murjani, this court found the sudden emergency defense applied to a defendant who was forced out of his lane by an oncoming unknown vehicle. The defendant lost control of his vehicle and swerved across his lane and into the lane of plaintiff. This court reversed a finding of negligence on the part of defendant by the jury, stating that the unknown vehicle put defendant in a position of imminent peril and ultimately caused the injury to plaintiff. We can easily distinguish the cases on the facts. In Murjani the defendant was faced with a head-on collision with the unknown vehicle and reacted by pulling off of the road and applying his brakes, instead of swerving across into the opposite lane of oncoming traffic. The circumstances facing Hare were far less dire, and his reactions more rash than those of the defendant in Murjani. Furthermore, his reactions put Gunn in the same situation as the defendant in Murjani. As a result we cannot allow Hare to prevail in his assertion of the sudden emergency defense.
We turn to the question of comparative fault. In determining the degree of fault, we have considered the guidelines set forth by the court in Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985).
The accident occurred because two drivers were negligent. The unidentified driver of the unknown vehicle acted negligently when he swerved into Hare's lane of traffic to avoid another potential accident of his own creation. Hare, in response to the actions of the unidentified driver made an effort to avoid what he perceived as a potential accident, and in doing so, created a far greater danger by entering an oncoming lane of traffic. We consider Hare's actions to contain the greater degree of negligence. Accordingly, we apportion twenty-five percent fault to the unknown vehicle, and seventy-five percent to Hare.
We have considered the monetary award made by the jury for damages sustained by Gunn. We do not find it to be abusively high and we will not disturb it. Accordingly, the award of damages in the amount of $292,500.00 will be affirmed.
For the foregoing reasons the judgment of the trial court is reversed in part, affirmed *810 in part and judgment is rendered in favor of Hattie D. Gunn in the amount of $292,500.00 with legal interest from the date of judicial demand, against defendants-appellants, Amica Mutual Insurance Company and Richard Hare, subject to a reduction of twenty-five (25%) constituting the degree of fault of the unknown driver.
Costs of this appeal will be assessed 75% to appellants and 25% to appellee.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
STOKER, J., concurs and assigns reasons.
STOKER, J., concurring.
I agree with the fact finding that an unknown and unidentified vehicle travelling in the same direction as Richard Hare suddenly turned from the outer west-bound lane into the west-bound inner lane in front of Richard Hare. Plaintiffs sought to impeach the testimony of the bank teller, McCain, stationed at a drive-in window which faced on to the thoroughfare (La. Hwy. 28) from the north. McCain testified she was an eyewitness to the accident and that an unidentified vehicle did cut into Hare's lane just before he veered to the left and collided with Gunn's vehicle. After viewing the photographs taken from the position occupied by McCain at the drive-in window at the branch location, I conclude that she could see the uppermost portions of the bodies of cars passing in front of her. A hedge does mask a view of the street itself, but the movement of vehicles could easily be observed.
These conclusions are supported by the testimony of Mr. Cameron Hudson, Senior Vice President of the bank, who was familiar with what could be seen from the drive-in window. He testified that a teller at the drive-in window could not see the street lanes or the center line of the street. However, he agreed that the upper portions of automobiles could be seen. The photographs in evidence show this. I believe McCain was able to see a vehicle proceeding west in the outside lane cut in front of a vehicle in the inside lane.
I agree with the majority's finding that Hare was not in fact presented with a sudden emergency. On this issue the defendant has the burden of proof and must make his case by clear and convincing evidence. Cf. Brannon v. Shelter Mut. Ins. Co., 507 So.2d 194 (La.1987).
NOTES
[*] Judge John A. Patin, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.