542 So.2d 140 (1989)
Emily J. CALLENDER
v.
DELCHAMPS, INC.
No. CA 88 0335.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
Walter Landry Smith, Baton Rouge, for Emily J. Callender.
Sidney J. Hardy, New Orleans, for Delchamps, Inc.
Before WATKINS, CRAIN and ALFORD, JJ.
*141 ALFORD, Judge.
The plaintiff, Emily J. Callender, brings this appeal of the trial court judgment in her favor awarding the following damages:

Past physical pain and suffering.... $3,000.00
Past mental pain and suffering...... 2,000.00
Past medical expenses............... 3,375.19
Past loss of earnings............... 1,200.00
 _________
 TOTAL $9,575.19

Ms. Callender asserts on appeal that the jury was improperly instructed because the trial court erred:
1) In denying an instruction that where a person is in good health before the accident and shortly thereafter suffers a flare-up of a dormant pre-existing illness or old injury it is presumed that the flare-up or symptoms were set in motion by the accident;
2) In denying a jury instruction to the effect that the defendant who is at fault in causing plaintiff's initial injury is liable for subsequent complications which arise as the result of that injury;
3) In denying an instruction that the testimony of a treating physician is entitled to greater weight than that of a physician who examined the plaintiff on one occasion for the purpose of giving an opinion in litigation; and,
4) In denying plaintiff's request for a jury instruction that a lost earnings award is to be made on the basis of gross earnings, rather than net earnings.
Ms. Callender further assigns as error the award of "unreasonably low and inadequate" damages.

FACTS
On November 29, 1985, a Friday, while shopping in Delchamps grocery store, Emily Callender slipped and fell on a wet floor near the meat department. Following the incident Ms. Callender was unable to complete her grocery shopping; she waited in the car while her friend, Marilyn Kay McDaniels, finished the shopping. Later that evening, Ms. Callender was too nauseous to eat and was in considerable pain and discomfort. The next day, Saturday, Ms. Callender went to the emergency room of the Medical Center of Baton Rouge, where she was examined by Dr. Fred Gaupp. X-rays were taken and pain medication was prescribed.[1]
On December 3, 1985, she was examined by Dr. J. Thomas Kilroy, an orthopedic surgeon, who found Ms. Callender to be "exquisitely point tender" on the distal sacral area and coccygeal segments. He suspected a fracture, prescribing pain medication and complete bed rest.
Ms. Callender was re-x-rayed on December 9, 1985. At that time Dr. Kilroy diagnosed a nondisplaced fracture of the distal sacrum. On December 16, 1985, Dr. Kilroy released Ms. Callender to return to work; however, she was instructed against bending, lifting, stooping or squatting. Following examination on January 15, 1986, Ms. Callender was discharged. Dr. Kilroy testified that Ms. Callender called his office on January 28, 1986 complaining of low back pain, for which he prescribed medication. Ms. Callender went to Dr. Kilroy's office on February 6, 1986 still complaining of back pain and Dr. Kilroy's examination revealed a limitation of flexion and extension with low back tenderness. Dr. Kilroy also found increased muscle tone and he prescribed medications and physical therapy.
Dr. Kilroy re-checked Ms. Callender on February 21, 1986 and found her to be generally asymptomatic although she complained of intermittent pain. Physical therapy was discontinued as the therapist had reported motion within normal limits. Ms. Callender returned to Dr. Kilroy on March 24, 1986 complaining that she was not improving. Unable to find objective symptoms, he referred her to Dr. Robert Hanchey for a neurological evaluation.
Ms. Callender testified that she continued to experience pain the entire time she *142 was under Dr. Kilroy's care. She further testified that as the pain in her tailbone subsided, she began to realize that the lower back pain was distinct from the tailbone pain. She testified that the physical therapy helped somewhat but did not completely alleviate her symptoms.
Ms. Callender further testified that she did not see Dr. Hanchey, but instead consulted Dr. Kenneth Adatto, an orthopedic surgeon recommended by her attorney. Dr. Adatto examined Ms. Callender on April 3, 1986 and she complained to him of aching back pains sometimes extending into her hip, thigh and leg with occasional muscle weakness. Ms. Callender reported to Dr. Adatto that the pain increased with prolonged sitting, standing or lying down. She also reported experiencing occasional dizziness. After examination, Dr. Adatto suspected Ms. Callender to be suffering from lumbar syndrome and ordered further testing.
A CAT scan and a thermogram were performed on May 1, 1986. Dr. Adatto testified that the CAT scan revealed an asymmetrical torsional strain in posterior joints and that the thermogram showed an irritated nerve in the lower segments. Dr. Adatto testified that he thought Ms. Callender's condition would improve over time. Dr. Adatto found mild limitation of motion and mild spasm following examination on both May 8, 1986 and June 12, 1986.
In September of 1986, an MRI test showed the L3-L4 disc wearing out. Dr. Adatto testified that this degenerative disc had been developing for some time and had pre-existed the accident, but, he opined that the accident aggravated the pre-existing condition. Dr. Adatto testified that Ms. Callender also suffered from facet joint arthrosis in the joints surrounding the L3-L4 disc. Dr. Adatto assigned Ms. Callender a disability rating of 5%. Dr. Adatto testified that Ms. Callender is able to perform most activities if careful with her back.
Ms. Callender testified at trial on July 13, 1987 that she continues to have lower back pain, particularly when she rides in the car for a prolonged period of time, sits in a chair all day long, or does any heavy lifting. She testified that she is unable to do much housework and is unable to dance as much as before the accident. Ms. Callender admitted having suffered a previous fall in 1982 when she bruised her tailbone, necessitating one visit to a chiropractor. She testified that thereafter she suffered no pain until the Delchamps accident.
On December 3, 1986, Ms. Callender was examined by Dr. George R. Cary, at Delchamps' request. Dr. Cary testified that the x-ray taken that day showed a neoform wedging of one of the coccygeal vertebrae, with degenerative changes above and below that joint. Dr. Cary found a normal range of motion on examination but noted discomfort on palpitation and tenderness just below the beltline in the center of the lower back; he found no evidence of muscle spasm. Dr. Cary opined that Ms. Callender probably sustained a mild strain of the lumbrosacral area. Dr. Cary felt that the pain would resolve with normal daily activity within the succeeding six to eight weeks. Dr. Cary was unable to say whether the disc degeneration was caused by normal physiology or by trauma. Dr. Cary testified that Ms. Callender was in need of no further medical treatment.

JURY INSTRUCTIONS
The appellant, Ms. Callender, contends that the failure of the trial judge to give certain requested instructions to the jury rendered the verdict returned by the jury so erroneous as to justify a trial de novo on appeal. The appellant assigned as error the refusal of the trial judge to give proposed charges Number 14, Number 16, and Number 21, which read as follows:

SPECIAL JURY INSTRUCTION NUMBER 14:
The defendant who is at fault in causing plaintiff's initial injury is liable for subsequent complications which arise as a result of that initial injury. [Citation omitted.]

*143 SPECIAL JURY INSTRUCTION NUMBER 16:
When a person who has enjoyed good health suffers an accident and within a short time thereafter a dormant pre-existing illness or old injury disconnected with the accident flares up or becomes active, it will be presumed that the flareup was not a coincidence and that it was set in motion as a direct result of the accident. It is sufficient for the plaintiff, in order to cast the burden of proof upon the defendant, to show by medical testimony that there is a reasonable possibility that the results claimed did happen. [Citations omitted.]

SPECIAL JURY INSTRUCTION NO. 21:
In determining damages for lost earnings, the calculation is to be made on the basis of gross earnings rather than net earnings. [Citations omitted.]
The appellant also sought to have the jury instructed that the testimony of a treating physician is entitled to greater weight than a physician who sees a patient one time for purposes of testifying in court.
In lieu of requested instructions Number 14 and Number 16, the trial judge instructed the jury that:
A tort feasor [sic] or negligent wrongdoer must take his victim as he finds him. A wrongdoer is responsible for all the natural and reasonable consequences of his wrong even though they are made much more serious or harmful by the reason of a pre-existing, physical defect, or weakness of the injured party.
In lieu of requested jury instruction Number 21, the trial judge instructed the jury that:
[A]ny amount which you might award to the plaintiff is not income within the meaning of the income tax laws. If you decide to make an award, follow the instructions I have given you, and do not add or subtract from that award on account of federal or state income taxes.
The only instruction given regarding the testimony of the expert witnesses was as follows:
The rules of evidence ordinarily do not permit witnesses to testify as to their opinions or conclusions about those facts. An exception to this rule exists as to those whom we call expert witnesses. These are people who, by education and experience, have become expert in some field. And are permitted to state their opinions as to relevant matters in the fields in which they profess to be expert, and give their reasons for those opinions. You should consider each expert opinion received into evidence in this case, and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education, and experience, or if you should conclude that the reasons in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.
In a jury trial, the judge is not required to give the precise instructions submitted by either party, but he must give instructions which properly reflect the law applicable in light of the pleadings and facts in each particular case. Beck v. Lovell, 361 So.2d 245 (La.App. 1st Cir.), writ denied, 362 So.2d 802 (La.1978). When a requested special charge is adequately covered by the trial judge's general charge to the jury, the failure to amplify by including specific requested verbiage does not constitute reversible error. Haynes v. Baton Rouge General Hospital, 298 So.2d 149 (La.App. 1st Cir.), writ denied, 302 So.2d 33 (La. 1974). The trial judge has discretion to use whatever language he believes may be appropriate to help the jury understand the issues; the charge as a whole need only convey to the jury a clear and correct understanding of the applicable law. Schoonmaker v. Capital Towing Co., 512 So.2d 480 (La.App. 1st Cir.), writ denied, 514 So.2d 458 (La.1987).
On review of the jury instructions given by the trial judge, in light of the pleadings and evidence in this case, we find the instructions as given to fairly and reasonably point up the issues presented and to provide correct principles of law to be *144 applied by the jury. See 512 So.2d at 486. Under the circumstances of this case, each of the appellant's requested jury instructions was adequately covered in the language chosen by the trial judge.

DAMAGES
The appellant argues that the amount of general damages awarded by the jury was unreasonably low and inadequate. Before a Court of Appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion in making its award. La.Civ.Code art. 2324.1; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The initial inquiry must be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
Ms. Callender's injuries have had a substantial impact on her life. At the time of the accident, Emily Callender was a 35-year-old single woman. Following the accident she was confined to bed rest for two weeks. When released to return to work, she was cautioned against bending, lifting, stooping or squatting. Ms. Callender has had to take numerous pain medications and muscle relaxants, undergo physical therapy, as well as, submit to frequent x-rays and various diagnostic testing procedures. In order to prevent back pain, Ms. Callender has had to curtail household duties and some social activities.
Dr. Kilroy testified that the soreness from Ms. Callender's injury should have resolved, at the latest, by July of 1986. Dr. Cary opined that Ms. Callender's pain should have subsided by approximately February of 1987. Dr. Adatto stated merely that Ms. Callender's condition would improve over time. Ms. Callender testified that she continued to experience pain on the date of the trial, July 13, 1987. Ms. Callender further testified that she has missed 336.5 hours of work from November 29, 1985 through July 1, 1987 on account of pain and keeping medical appointments.
It is undisputed that Ms. Callender suffered a nondisplaced fracture of the distal sacrum as a result of the accident. In addition, Ms. Callender has developed a degenerative disc at L3-L4 and facet joint problems at that level. The medical testimony indicates that the degenerative disk probably preceded the slip and fall accident; however, an accident such as suffered by appellant could have caused the previously asymptomatic condition to become symptomatic. There was no medical testimony asserting that Ms. Callender would suffer pain in the future, Dr. Adatto merely stated that certain preventative measures should be undertaken by appellant to preclude the re-occurrence of pain.
Accordingly, we are unable to say that the jury's failure to make an award for future general damages was an abuse of discretion. However, we find the award of only $5,000.00 for Ms. Callender's past mental and physical pain and suffering to be a clear abuse of discretion considering the effects of these particular injuries on appellant. We believe the lowest award reasonably within the discretion of the court for the past mental and physical suffering of appellant, herein to be $10,000.00. Consequently, the judgment of the trial court should be amended to reflect an award of $10,000.00 for past physical and mental pain and suffering.
Appellant also complains that the award made for past loss of earnings, in the amount of $1,200.00, was an abuse of discretion. We agree. The testimony of Ms. Callender that she lost 336.5 hours of work was uncontradicted. She further testified as to her wages and that for 336.5 hours, she would have been paid $3,707.68; this testimony was likewise undisputed. The arbitrary award of $1,200.00 was clearly an abuse of discretion. Consequently, the judgment should be amended to reflect an award of $3,707.68 in lost earnings.
For the reasons assigned in the foregoing opinion, the trial court judgment is amended as reflected herein, with all costs *145 of this appeal to be borne by the appellee herein.
AMENDED.
NOTES
[1] The liability of Delchamps, Inc. for Ms. Callender's injuries was not disputed at trial; the only issues presented to the trial court were the nature and extent of the injuries and the amount of damages.