599 So.2d 369 (1992)
Eleanor Faye WARREN, Wendy Warren, Angela Warren, Shonda Warren and George Warren, Jr., Plaintiffs-Appellees,
v.
Ned A. BERGERON, Charles "Chuck" Canter, Benjamin Daughtery and Anthony Fondaw, Defendants-Appellants.
No. 90-1163.
Court of Appeal of Louisiana, Third Circuit.
April 16, 1992.
*371 J. Minos Simon, Lafayette, for plaintiffs/appellees.
Charley J. Schrader, James L. Alcock, Houma, for defendant/appellantBergeron.
Charles Canter, in pro. per.
Benjamin Daughtery, in pro. per.
Anthony Fondaw, in pro. per.
Before GUIDRY and HOOD, JJ., and MARCANTEL,[*] J. Pro Tem.
BERNARD N. MARCANTEL, Judge Pro Tem.
Defendant, Ned A. Bergeron, appeals the judgment of the trial court in this case alleging 18 assignments of error. These *372 assignments involve the issues of severance, change of venue, admission of prior testimony, instructions to the jury regarding different areas of law, and the manner in which the trial was conducted. Each assignment will be addressed individually in the body of this opinion.
Plaintiffs, the widow and children of George Warren, Sr., brought this survival and wrongful death action against defendants, Ned A. Bergeron, Charles "Chuck" Canter, Benjamin Daughtery and Anthony Fondaw.
This case was originally set for trial on the merits on July 26, 1988, but, after a series of motions were filed seeking change of venue, an extension of time to file pretrial pleadings, an extension of time to file a pretrial brief, and a continuance, the trial was ultimately held on October 24, 1989 through November 18, 1989.
The jury returned special verdicts finding in favor of plaintiffs and against defendants, condemning defendants, Ned Bergeron and Benjamin Daughtery, in solido, to pay plaintiffs $750,000.00 in damages for pain and suffering endured by George Warren, Sr. On the wrongful death claim, the jury ordered defendants, Bergeron and Daughtery, in solido, to pay Eleanor Faye Warren $3,250,000.00, Wendy Warren Darby, $200,000.00, George William Warren, Jr., $200,000.00, Shonda Warren Laborde, $100,000.00, and Angela Warren Foster, $100,000.00.
Bergeron filed a motion for a new trial, which was subsequently denied on December 8, 1989, and this court denied his application for supervisory writs on January 3, 1990. It is from the final judgment dated November 28, 1989 that Bergeron devolutively appeals.

FACTS
On February 8, 1987, two armed men entered the home of George W. Warren, Sr., and shot and fatally wounded Warren. Later, the two men were identified as Benjamin Daughtery and Anthony Fondaw. They were both subsequently arrested and charged with first degree murder.
On July 3, 1987, Daughtery gave a confession to the Vermilion Parish Sheriff's Office in which he claimed that Warren's business partner, Ned A. Bergeron, had hired him to kill Warren. Soon thereafter, Bergeron was arrested, along with Charles "Chuck" Canter, the person Daughtery claimed to have been the intermediary between him and Bergeron. Daughtery had worked out a plea bargain with the district attorney in which Daughtery would testify against Bergeron and Canter in the criminal trials against them in exchange for the first degree murder charge being reduced to second degree murder, to which charge Daughtery pled guilty.
A Vermilion Parish Grand Jury subsequently indicted Bergeron and Canter for the murder of Warren. Canter was tried and found guilty of the crime of second degree murder. Bergeron was acquitted of the crime charged.
Plaintiffs subsequently brought this survival action under La.C.C. art. 2315.1 and wrongful death action under La.C.C. art. 2315.2. Plaintiffs contend that, under La. C.C. art. 2324, all the defendants were answerable in solido for the damages caused to them by the murder of their husband and father, George Warren, Sr.

ASSIGNMENT OF ERROR NUMBER 1
Bergeron contends that a joint trial with the other defendants created a potential for unfairness and prejudice to him and, therefore, the trial court erred in denying his motion to sever. Bergeron relies on La.C.C.P. art. 465, which gives the trial court discretion to separate cumulated actions if it would simplify the proceedings, permit a more orderly disposition of the case, or be in the interest of justice.
Plaintiffs rely on the principle established by the Supreme Court in an early case, Prall v. Peet's Curator, 3 La. 274 (La.1832), which states that, when defendants are being sued as in solido obligors, they are not entitled to a severance for the purpose of trial. This rule was repeated in Brewer v. Foshee, 178 So. 778 (La.App. 2 Cir.1937), affirmed as amended, 189 La. 220, 179 So. 87 (La.1938). In Brewer, the *373 court reiterated the principle set forth in Prall, supra, and further stated that defendant showed no good reason for severing the defendants. The court also stated that "To sustain this action will mean that a new suit will be instituted against George Foshee, attended with much unnecessary trouble and inconvenience, and at the rate the present one has progressed, several years will have flown by before a final decree could be had." Brewer, supra, 178 So. at page 782.
Plaintiffs also relied on Schwing v. Dunlap, 130 La. 498, 58 So. 162 (La.1912), in which the court notes that, if any prejudice has occurred to the appellant for being jointly tried with the co-defendant, that prejudice was the result of appellant's own voluntary association with the co-defendant out of which plaintiffs' cause of action arose.
It is from this line of reasoning and jurisprudence that this court affirms the trial court's denial of Bergeron's motion to sever. First, it is within the trial court's discretion to decide whether severance should occur. Second, unless there is good reason to sever the co-defendants, solidary obligors should be tried together. Third, if the good reason is because of prejudice and that prejudice is the result of the defendant's own voluntary actions with the co-defendant, defendant, through these actions, has placed himself in the position where prejudice may result. Fourth, piecemeal litigation is not sanctioned by the courts and, where the same witnesses would be called to testify, judicial economy dictates that there be one trial. Therefore, we affirm the trial court's denial of Bergeron's motion to sever.

ASSIGNMENT OF ERROR NUMBER 2
Bergeron claims that the trial judge erred when he transferred this case to Lafayette Parish or when he failed to grant Bergeron's request for a change of venue from Lafayette Parish.
Originally, this action was set for trial in Vermilion Parish. Bergeron filed a motion for change of venue on July 15, 1988 due to the publicity the case had generated. On July 21, 1988, this case was transferred to Lafayette Parish.
Bergeron filed another motion for change of venue on August 31, 1988 because he felt there had been extensive media coverage in Lafayette Parish and believed that some of the plaintiffs were residing in Lafayette Parish. The trial court denied this motion.
On Bergeron's writ application, we reversed the trial court's holding. 533 So.2d 1389 (La.App. 3 Cir.1988). However, the Louisiana Supreme Court reversed this court and reinstated the judgment of the trial court. 534 So.2d 959 (La.1988).
We consider the Supreme Court ruling on this issue to be not subject to further review under the principle of "law of the case."

ASSIGNMENT OF ERROR NUMBER 3
Bergeron claims that the testimony of Daughtery from his prior criminal trial should not have been admitted into evidence.
Daughtery's testimony from the criminal trial on this matter was held to be admissible by the trial judge pursuant to La.C.E. art. 804 A(2) and B(1), which reads as follows:
"A. Definition of unavailability. Except as otherwise provided by this Code, a declarant is `unavailable as a witness' when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
* * * * * *
(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so;
* * * * * *
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of *374 the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception."
Bergeron claims that the Louisiana Code of Evidence does not apply in this case since suit was filed prior to the effective date of the Act. Acts 1988, No. 515, § 12, providing when the provisions of the Code of Evidence would be effective, states:
"SECTION 12. (1) The provisions of this Act shall govern and regulate all civil proceedings commenced and criminal prosecutions instituted on or after the effective date of this Act.
(2) Furthermore, it shall govern and regulate all hearings, trials or retrials, and other proceedings to which it is applicable which are commenced on or after the effective date of this Act, except to the extent that its application in a particular action pending when the Act takes effect would not be feasible or would work injustice, in which event former evidentiary rules apply.
(3) All of the provisions of this Act shall become effective on January 1, 1989."
The trial in the present case was commenced on October 25, 1989. The effective date of the enactment of the Code of Evidence was January 1, 1989. Since this trial was commenced after the effective date of the Act, we hold that the Code of Evidence was applicable to this case.
Since Daughtery refused to testify, the trial judge was correct in holding that his former testimony from the previous criminal trial was admissible in the civil trial under La.C.E. art. 804. We find that it was not prejudicial to introduce this testimony since the facts and circumstances of the previous criminal trial were very similar to the facts and circumstances of this trial and defendant Bergeron had full opportunity to cross-examine Daughtery in the criminal trial.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 4
Bergeron contends that it was error to admit into evidence the testimony of Luke Dietz from Bergeron's prior criminal trial.
At trial, plaintiffs' counsel moved to introduce the testimony of Dietz from Bergeron's prior criminal trial because Dietz was not available to testify. The subpoena return showed Dietz was "In Department of Corrections in Ohio."
We find, for the reasons set forth in assignment of error number 3, that the testimony of Dietz from Bergeron's prior criminal trial is admissible under La.C.E. art. 804, since Dietz was unavailable.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 5
Bergeron claims that the jury committed error when it determined that he was involved in a conspiracy to kill Warren as the evidence was not sufficient to support this finding.
The Louisiana Supreme Court discussed an appellate court's standard of review of a jury's finding of fact in Rosell v. ESCO, 549 So.2d 840 (La.1989), on remand 558 So.2d 1360 (La.App. 4 Cir.1990), writ den., 561 So.2d 105 (La.1990). The Supreme Court stated that an appellate court may not set aside a trial court's finding of fact in the absence of manifest error and, where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The Supreme Court also stated that, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
*375 After review of the evidence in the record, we find that the jury was not manifestly in error in its conclusion that the plaintiffs had proved by a preponderance of the evidence that Bergeron was involved in a conspiracy to kill Warren.
Daughtery's testimony, which was introduced from Bergeron's criminal trial, definitely incriminates Bergeron in a conspiracy to kill Warren. Daughtery testified that he had met with Canter and Bergeron at the Sights and Sounds Shop to discuss the murder of Warren. There was testimony in the record that this meeting could not have occurred at the time stated by Daughtery, but, as the court in Rosell, supra, stated at pages 844-845:
"When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.... But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneously or clearly wrong."
Also, there was other corroborating evidence in the record from which the jury could have reasonably concluded that Bergeron conspired to have Warren murdered. Therefore, we find that the jury was not clearly wrong in its finding that Bergeron had conspired with Canter, Daughtery and Fondaw to murder Warren.

ASSIGNMENTS OF ERROR NUMBERS 6, 7, and 8
In these assignments of error, Bergeron claims that the trial court erred in failing to apply the law that acts and statements of alleged co-conspirators may not be used to prove the conspiracy unless a prima facie case of conspiracy has been established. Bergeron claims that the trial court should have given a precautionary instruction and a final instruction to the jury stating the above.
La.C.E. art. 801 D(3)(b) states:
"D. Statements which are not hearsay. A statement is not hearsay if:
* * * * * *
(3) Relational and privity admissions. The statement is offered against a party, and the statement is:
* * * * * *
(b) A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy has been established;"
We read this article to state that a statement made by a co-conspirator during the conspiracy itself is not admissible against a party until a prima facie case of a conspiracy has been established. Therefore, evidence other than statements made during the conspiracy are admissible to prove that a conspiracy existed.
Additionally, after a review of the evidence in the record, we find that plaintiffs did establish a prima facie case that a conspiracy existed. A conspiracy, for the purposes of this case, is defined by La.R.S. 14:26(A) as follows:
"A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination."
Testimony elicited from the first witness for plaintiffs, Wendy Warren Darby, established that the murder of Warren was committed *376 by two people as she was an eyewitness to the murder. Therefore, we find that it was established that at least two people had an agreement to murder Warren and that at least one had done an act in furtherance of that agreement. We find that this meets the definition of a criminal conspiracy and, therefore, plaintiffs did establish that a conspiracy existed. Once plaintiffs established a prima facie case that a conspiracy to murder Warren existed, then they met the requirements of La. C.E. art. 801 D(3)(b).
Thus, as a prima facie case of conspiracy had been established, Daughtery's statement, which we have previously held admissible as prior testimony under La.C.E. art. 804 A(2) and B(1), was no longer objectionable as hearsay. It was the jury's burden to weigh this testimony. Rosell, supra.
The trial judge gave sufficient final jury instructions on the law of conspiracy. The trial judge told the jury that, in order to find Bergeron liable for the death of Warren, it must find "by a preponderance of the evidence that, (1), a specific agreement existed between them and, (2), that George Warren died as a result of acts in furtherance of that conspiracy." Therefore, in order for the jury to have found Bergeron guilty of a conspiracy, it must have found that he was a part of the agreement to murder Warren. We find that this instruction on the law of conspiracy to the jury was sufficient.
For these reasons, these assignments of error lack merit.

ASSIGNMENTS OF ERROR NUMBERS 9, 10, 11, 12, 13, and 14
Each of these assignments of error deal with instructions to the jury in certain areas of the law. Each will be dealt with individually as follows:

I. Conspiracy Instructions

Bergeron contends that the trial judge did not give adequate instructions on the law of conspiracy. In Creel v. S. A. Tarver & Son Tractor Co., 537 So.2d 752, at page 753 (La.App. 1 Cir.1988), the court stated:
"The judge in a jury trial is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in view of the facts present. The adequacy of jury instructions must be determined in light of the instructions as a whole. Laborde v. Velsicol Chemical Corp., 474 So.2d 1320 (La.App. 3d Cir.1985), writ denied, 480 So.2d 738 ([La.] 1986)."
In reviewing the trial court's instructions given to the jury, we find the trial judge gave adequate instructions regarding the law of conspiracy. The trial judge prefaced the conspiracy instructions with the principles of fault under La.C.C. art. 2315, standard of conduct, intent and ended with a two-fold test for conspiracy needed to convict based on a preponderance of the evidence.
This assignment of error lacks merit.

II. Instructions Regarding Testimony of the Witnesses

Bergeron contends that the trial judge failed to give any jury instructions regarding biased, interested or corrupt witnesses. A reading of the jury instructions given shows that the trial judge did generally instruct the jury regarding the weight to be given a witness' testimony and discrediting a witness' testimony by prior inconsistent testimony.
Therefore, this assignment of error is without merit.

III. Instructions On Damage Awards

Bergeron contends that the trial judge failed to correctly instruct the jury on the law of damage awards. Again, in reviewing the instructions as a whole, we find that the instructions on this issue were adequate.
This assignment of error is without merit.

*377 IV. Instructions On Corporation Law

Bergeron complains that the trial judge failed to correctly instruct the jury regarding corporation law. A trial judge is not required to give all the law available on a subject matter involved but, rather all the law that is pertinent to the case in terms that the jury can comprehend and apply to the evidence before it. Aguillard v. Lake Charles Stevedores, Inc., 284 So.2d 124 (La.App. 3 Cir.1973), writ den. 286 So.2d 663 (La.1973). Although the trial judge did not instruct the jury on corporation law, the instructions given to the jury regarding the pertinent issues were adequate.
Therefore, this assignment of error lacks merit.

V. Instructions Regarding A Deliberately Untruthful Witness

The adequacy of jury instructions must be determined in light of the instructions as a whole. Creel v. S. A. Tarver & Son Tractor Co., supra. It is our opinion that the trial judge's instructions to the jury adequately covered this issue.
This assignment of error is without merit.

VI. Instructions Regarding Impeachment Of A Witness Who Has Been Convicted Of A Crime

Bergeron contends that the trial judge gave no instruction to the jury regarding the impeachment of a witness by showing his conviction of a crime. After reviewing the objections lodged by Bergeron, we do not find that Bergeron raised an objection to this omission by the trial judge. Therefore, under La.C.C.P. art. 1793, Bergeron is deemed to have waived this objection.

ASSIGNMENT OF ERROR NUMBER 15
Bergeron claims that the trial judge committed prejudicial error in allowing the plaintiffs to introduce evidence on a collateral matter for the purpose of impeachment.
While on cross-examination, Bergeron was asked whether he requested Lewis to pick up a note for him. Bergeron denied the question. Bergeron was also asked whether he made a statement to Lewis after he received the note. Bergeron denied making a statement.
Lewis' testimony at a prior bond hearing contradicted Bergeron's answers given under cross-examination.
We find that Lewis' prior testimony had probative value for the purposes of impeaching defendant. We also find that Bergeron was not prejudiced by this statement because the trial judge gave the jury limiting instructions prior to admitting the statement to consider the statement as it went to the credibility of Bergeron and not for the truth of the matter.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 16
Bergeron contends that the trial judge committed prejudicial error of fact and law when the trial judge limited him in his presentation of evidence by setting a time limit on when the case should come to an end.
Under La.C.C.P. art. 1631, the trial judge has great discretion in conducting a trial. The trial judge is required to do so in an orderly, expeditious manner and to control the proceedings so that justice is served. Combs v. Hartford Ins. Co., 544 So.2d 583 (La.App. 1 Cir.1989), writ den. 550 So.2d 630 (La.1989). After reviewing the record, we do not find the trial judge abused his discretion or was manifestly erroneous in his decision to bring the trial to an end within a specific time limit.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 17
Bergeron claims that the jury awards for damages were excessive and not supported by sufficient evidence to justify them.
The Louisiana Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (1976) stated that, before an appellate court can disturb a quantum award made by a trial court, the record must clearly show *378 that the trier of fact abused its discretion in making the award.
The evidence in the record supports a finding that Warren had an income of $100,000.00 a year at the time of his death. At the time of his death, Warren was 43 years old. The Vital Statistics of the United States, 1986 life tables published by the U.S. Department of Health and Human Resources listed the life expectancy of a 43 year old white male to be 34.9 years. According to the evidence, Warren would have earned $3,490,000.00 during his life.
A determination of the measure of damages will not be disturbed on appeal unless the trier of fact abuses its much discretion in making an award, and it will then be disturbed only to the extent of lowering the award or raising it to the highest or lowest point which is reasonably within the discretion afforded to the trial court. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Hopkins v. Travasos, 569 So.2d 1056 (La.App. 3 Cir.1990).
The jury awarded Eleanor Warren, the decedent's wife, $3,000,000.00 for loss of support. We find that this was an abuse of discretion by the jury since it did not take into account the present value of the lump sum awarded Eleanor Warren. The most the jury could have awarded Eleanor Warren for the loss of support is $1,448,676.00. This amount, if invested today at a conservative rate of 6%, would yield $100,000.00 a year for the next 34.9 years.
The jury also awarded $750,000.00 as damages for the injury suffered by Warren. There are also general damages awards in the amounts of $250,000.00 to Eleanor Faye Warren; $200,000.00 to Wendy Warren; $100,000.00 to Shonda LaBorde; $100,000.00 to Angela Foster; and, $200,000.00 to George Warren, Jr. We find that there was no abuse of the jury's much discretion in the amounts of these awards.

ASSIGNMENT OF ERROR NUMBER 18
Bergeron contends that the trial judge erred in instructing the jury that conspiracy must be proven by a preponderance of the evidence rather than by clear and convincing evidence.
This court granted writs of certiorari and review on this issue during the trial and, relying on Acadian Production Corporation of Louisiana v. McKendrick, 223 La. 79, 64 So.2d 850 (La.1953), found that the burden of proof for proving a conspiracy is by a preponderance of the evidence.
Therefore, we find this assignment of error is without merit.
For the reasons assigned, the judgment of the trial court is amended to reduce the trial court award to Eleanor Warren for loss of support from $3,000,000.00 to $1,448,676.00; otherwise, the judgment is affirmed. Costs of this appeal are assessed to defendant-appellant, Ned A. Bergeron.
AMENDED AND AFFIRMED.
GUIDRY, J., concurs in the result.
NOTES
[*] Judge Warren E. Hood, Retired, and Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.