649 So.2d 1203 (1995)
HI-TECH TIMBER COMPANY, INC., Plaintiff-Appellee,
v.
VALLEY ELECTRIC MEMBERSHIP CORPORATION, et al., Defendants-Appellants.
No. 94-1033.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
Writ Denied April 20, 1995.
*1204 Foster Clay Tillman Jr., Leesville, for High-Tech Timber Co., Inc.
Brian David Smith, Shreveport, for Valley Elec. Membership Corp., et al.
Before DOUCET, C.J., and THIBODEAUX and SULLIVAN, JJ.
*1205 THIBODEAUX, Judge.
This is an appeal from a twelve person jury verdict in favor of the plaintiff-appellee, Hi-Tech Timber Company, Inc., assessing 100% fault against the defendants-appellants, Valley Electric Membership Corporation and its employee, Richard B. Gillespie, Jr., and fixing property damages at $18,000.00 and the loss of the use of the vehicle at $4,350.00 arising out of a vehicular accident. Finding no error or abuse of discretion at the trial court level, we affirm.

I.

ISSUES
The issues are whether Hi-Tech and its driver, Roger Morris, are at fault and whether the trial judge abused his discretion with regard to jury instructions on liability and with regard to the exclusion of testimony and evidence presented by the defendants' investigator. Furthermore, this appeal presents the issues of whether the jury abused its discretion in the award of damages for the truck which was totalled in the accident and whether the jury's award of damages for loss of use of the truck was excessive.

II.

FACTS
On May 22, 1992, Morris, the operator of a log truck owned by Hi-Tech, was involved in an accident while he proceeded north on Louisiana Highway 392, a two-lane, rural highway and came around the curve at the top of a steep hill. Furthermore, the highway has no shoulders and deep ditches on each side. As he proceeded around the curve, he saw on his right side a sign that said, "Men Working." He saw no other signals, signs or flares. The testimony of Gillespie revealed that his crew was at the site on Highway 392 changing out a bad pole. Gillespie's testimony further revealed that at the time of the accident, they used only the cones and the "Men Working" sign which was set up on the side of the road. Gillespie further testified that they had no flares, flagmen, or any other warning that the entire roadway was blocked. As he descended the steep hill, Morris was confronted with Valley Electric vehicles blocking the entire roadway. Earlier that day, the Valley Electric work crew was assigned to remedy a potentially dangerous situation involving a high voltage distribution line pole which was broken. Valley Electric sent out two trucks, a bucket truck and a digger truck. In order to replace the pole, the digger truck had to go in the ditch where the rotted pole was located. Due to its position in the ditch and its weight, the digger truck got stuck. After the Valley Electric employees replaced the pole, the digger truck had to be pulled out of the ditch by hooking a chain to the bucket truck. This was the first time that a Valley Electric employee took it upon himself to go up the road to warn oncoming traffic about blockage of the roadway. The Valley Electric employee was not wearing an orange vest nor did he carry a flag or a walkie talkie to communicate with his fellow workers down the hill. He was positioned on the roadway halfway between the curve and the Valley Electric workers.
Morris, at first, was hired by Shell Brothers Logging as a mechanic. He later obtained his Louisiana commercial drivers license and became a driver. Morris had driven eighteen-wheelers and timber trucks for numerous years for other companies prior to driving for Shell. Morris testified that he began driving for Shell about two to three weeks prior to the accident. He further testified that he performed daily inspections of the truck's braking system for air leaks, the lights, loose tire lugs, the oil, water and belts. Morris stated that he either inspected the truck at home or at the shop the evening prior to the accident. Furthermore, the truck was inspected and serviced on a weekly basis. If adjustments to the braking system were needed, he did it and those adjustments were re-inspected by the shop mechanic.
On the date of the accident, Morris was hauling saw logs from the woods to the mill. Saw logs are bigger and heavier than regular logs. The accident occurred on his second trip to the mill. Valley Electric employees were not working on the pole on his first trip. Morris described his actions just prior to the accident. He stated that he was going up a *1206 hill at about 40 miles per hour and after topping the hill there was a slight downgrade so he began to gain a little speed. Because he was approaching a curve and going down a hill, he had to apply his brakes. When he reached the curve, which was at the top of the hill, he saw the "Men Working" sign. About halfway to the curve in the road he started to brake because the truck is top heavy. After he made the curve over the top of the hill, he saw the Valley Electric employees working and blocking the entire roadway. When he saw the "Men Working" sign, Morris testified that he did not think that the road was blocked but that men would be working on the side of the road. Gillespie testified that prior to pulling the digger truck out of the ditch, the Valley Electric work crew was not blocking the road. However, the testimony indicates that once the road was blocked, Valley Electric did nothing to indicate this obstruction.
Morris testified that he did not want to hit the trucks because there was at least one man standing between the two trucks. As he saw the situation below, Morris dropped two to three gears allowing the motor and the transmission to help in the braking of the truck. Applying the brakes on the truck does not lock the brakes because the truck was equipped with an anti-lock braking system. Had the brakes locked he would have had less control of the truck. Morris struck the pole that was protruding from the digging truck at about twenty miles per hour, after which, he put the truck in the ditch. Morris testified that putting the truck in the ditch was the only thing he could do to avoid hitting the Valley Electric vehicles and employees. After landing in the ditch, the truck travelled fifteen feet. Morris described what happened to the truck. The wheels hit the bank of the ditch. The logs slid forward in the truck and cut the headache rack and shoved it into the cab of the truck against his seat, pushing Morris over the steering wheel. Morris testified that although he was conscious immediately following the accident, he was in shock.
Gillespie testified that the "Men Working" sign was put out to indicate that they were working on the side of the road and not to indicate that the road was blocked. He was never told that using the sign allowed them to block the road. Furthermore, on the east side of the roadway, there was no sign since they were short one sign. Gillespie also testified that no one in the crew thought about stopping traffic before they began pulling the digging truck out of the ditch. Gillespie further testified that the road was blocked because they were in the process of unchaining the digger truck from the bucket truck. However, he admitted that they could have driven the vehicles into one lane of the roadway before unchaining the vehicles which would have allowed the traffic to pass in the unoccupied lane. He further admitted that had he taken that action, the accident would not have occurred.

III.

LAW AND DISCUSSION
Valley Electric argues that the jury abused its discretion in failing to assess fault to Hi-Tech. Not surprisingly, Hi-Tech argues that there was no error in the jury's assessment of fault. Preliminarily, it should be noted that the standard of review is not whether the jury abused its discretion in its allocation of fault, but whether the jury committed manifest error or was clearly wrong in finding that Valley Electric was wholly at fault.
The jury found Valley Electric and Gillespie to be 100% at fault for the accident and concomitant damages to the truck and its loss of use to Hi-Tech. Since the Louisiana legislature's adoption of a comparative fault system, it has been the task of the fact finder to allocate shares of fault. La.Civ. Code art. 2323; Socorro v. City of New Orleans, 579 So.2d 931 (La.1991). In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 973 (La.1985), the supreme court stated:
"[i]n determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed."
*1207 In Socorro, supra, the supreme court, quoting from Watson, supra, set forth several factors which may influence the respective degrees of fault:
"In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including (1) whether the conduct resulted from inadvertence or involved an awareness of danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought."
Socorro, 579 So.2d at 942.
Because each of the factors which may influence the respective degrees of fault are factual considerations, the manifest error/clearly wrong standard is applicable. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). The percentage allocation of fault in a comparative negligence case is also a question of fact and, as in any other question of fact, it should not be disturbed in the absence of manifest error or clear wrongness. Socorro, supra.
After reviewing and evaluating the record and applying the factors as set forth in Socorro and Watson to assess the nature of the conduct of each party, we find that the jury was not clearly wrong nor did it commit manifest error in its allocation of fault.
The jury apparently took the view of the plaintiff and concluded that the accident was the fault of Valley Electric and Gillespie. The inference to be drawn from the verdict is that Valley Electric and Gillespie did not do all they could have to warn oncoming vehicles that the road was blocked. Unfortunately, in this case, as in all other jury cases, we are unaware of the factual considerations which the members of the jury used to reach the verdict. The facts related above are some of the facts the jury could have accepted and relied upon to reach its conclusion.
There was ample evidence in the record tending to show that if it were not for Valley Electric's lack of warnings, the accident would not have occurred. Gillespie admitted that he and his crew could have moved the Valley Electric trucks to one lane, thereby allowing the traffic to pass through the empty lane. Furthermore, Valley Electric's employees used no signs or warning devices of any sort indicating that the road was completely blocked. The location of the Valley Electric trucks and its employees was perilous since the trucks blocked the roadway at the bottom of a hill. The record reveals that the brakes of the Hi-Tech truck driven by Morris were checked daily and adjusted if necessary and that weekly inspections of the trucks were also conducted. The jury could have found that the brakes did not malfunction on the date of the accident. Also, prior to driving trucks for Shell, Morris drove other eighteen-wheelers; thus, the jury could have found that Morris was an experienced driver. Under the evidence as disclosed by the record, we are not persuaded to disturb the verdict of the jury as to fault as one founded upon manifest error or clear wrongness. See Rosell v. ESCO, 549 So.2d 840 (La.1989).

IV.

JURY INSTRUCTIONS AND EXCLUSION OF EVIDENCE
Valley Electric's assignment of errors numbers two through four concern several actions taken by the trial judge during the trial of this matter. First, Valley Electric argues that the trial judge abused his discretion regarding the jury instructions concerning liability by (1) including an instruction on the sudden emergency doctrine; (2) including a quotation from La.R.S. 32:141 and paraphrasing that statute; and (3) failing to give instructions submitted on the law regarding: (a) awards for property damage, (b) the duty of a driver to maintain a proper lookout for hazards, (c) the degree of care of a motorist whose visibility is impaired, and (d) the absence of a duty to warn of obvious hazards.

A. Sudden Emergency Doctrine Instructions
Valley Electric contends that the trial court took it upon itself to include a "sudden *1208 emergency doctrine" instruction which was not applicable in the present case. More specifically, Valley Electric contends that where the emergency is brought about by the plaintiff driver's own negligence, the doctrine does not apply; therefore, the instruction should not have been given.
Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. The adequacy of jury instructions must be determined in light of the jury instructions as a whole. Doyle v. Picadilly Cafeterias, Inc., 576 So.2d 1143 (La.App. 3d Cir.1991). An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. Doyle, supra.
Morris testified that there were no warning devices before he topped the hill, indicating that the road was blocked. His testimony was corroborated by Gillespie, a Valley Electric employee on the scene. Clearly, there was an issue of whether an emergency existed. The trial judge told the jury that one who finds himself in a position of peril, without sufficient time to consider and weigh all the circumstances or best means to avoid impending danger, is not guilty of negligence. However, the trial judge further instructed the jury that if that person finds himself in an emergency situation brought about by his own negligence, then he may be guilty of negligence. The jury was instructed not to apply the sudden emergency doctrine in a case where they conclude that the driver's own negligence caused the emergency situation. Therefore, this assignment of error is without merit.

B. Louisiana Revised Statute 32:141 Instructions
Valley Electric objected to the trial judge using a quotation from La.R.S. 32:141, which was followed by a paraphrase of the statute. The statute provides for the duty of drivers of vehicles which are disabled, stopped, parked, or left standing on a highway, whether attended or unattended. The testimony of Gillespie reveals that the two Valley Electric trucks were blocking the entire roadway while the digger truck was being unchained from the bucket truck. In our view, it was proper for the trial judge to include the statute in his instructions to the jury. In paraphrasing the statute, the trial judge stated: "The statute requires the driver of a disabled vehicle to remove his vehicle from the main traveled portion of the highway as soon as possible. Until the vehicle is removed, it is the driver's responsibility to protect traffic." The trial judge has discretion to use whatever language he believes may be appropriate to help the jury understand the issues. Callender v. Delchamps, Inc., 542 So.2d 140 (La.App. 1st Cir.1989). It is our opinion that the trial judge's paraphrase of La.R.S. 32:141 comports with subparagraph B of the statute.[1] This argument is without merit.

C. Exclusion of Proposed Jury Instructions
In a jury trial, the judge is not required to give the precise instructions submitted by either party, but he must give instructions which properly reflect the law applicable in light of the pleadings and facts in each particular case. Warren v. Bergeron, 599 So.2d 369 (La.App. 3d Cir.), writ denied, 604 So.2d 995 (1992); Doyle, supra; Callender, supra. Furthermore, the trial judge is not required to give all the law available on a subject matter involved. All that is required is the law that is pertinent to the case in terms that the jury can easily comprehend and apply to the evidence before it. The adequacy of the jury instructions must be determined in light of the instructions as a whole. Warren, supra.
The trial judge felt that his general charge encompassed the Valley Electric's *1209 submitted jury instructions. In reviewing the trial court's instructions given to the jury, we agree and find that the trial judge gave adequate instructions pertaining to: awards for property damage where he instructed the jury to award the lesser of the amount to replace or repair the damaged truck; the driver's duty to maintain a proper lookout where the trial judge charged the jury that a "driver's duty of reasonable care includes ... duty to maintain a proper lookout for hazards." Also, the trial judge's instructions pertaining to negligence and proximate cause and comparative negligence adequately instruct the jury to consider the circumstances in determining the motorist's degree of care, the inference being that if Morris' visibility was impaired his degree of care should be higher. Lastly, the trial judge instructed the jury to consider Morris' awareness of the danger in determining his comparative fault which corresponds with the absence of the duty to warn of obvious danger. This assignment of error is without merit.
Secondly, Valley Electric contends that the trial judge abused his discretion when he excluded testimony by its defense investigator regarding his measurements, photographs, and observations of the accident scene.
The trial judge, of course, is granted broad discretion in conducting a trial and in determining whether to receive or refuse testimony and evidence. Ware v. Medical Protective Insurance Co., 621 So.2d 54 (La. App.2d Cir.), writ denied, 629 So.2d 354 (1993). An appellate court must place great weight on the trial judge's ruling of relevancy of evidence and should not reverse such a ruling in the absence of a clear abuse of discretion. Krampe v. Krampe, 625 So.2d 383 (La.App. 3d Cir.1993), writ denied, 630 So.2d 781 (1994).
The record shows that Valley Electric's investigator, William P. O'Bannon, was qualified only as an expert in the valuation of vehicles and vehicle salvage. Furthermore, O'Bannon was not at the scene of the accident. His testimony regarding the accident scene had nothing to do with the valuation of the truck involved in the accident. Moreover, as noted in Hi-Tech's brief and as supported by the record, O'Bannon's diagrams and measurements were based upon hearsay and the photographs were staged. The prejudicial effect of these diagrams (which were not drawn to scale) and photographs which did not depict the accident scene correctly, far outweighed any probative value they may have possessed.
After reviewing these facts, we find that the trial court did not err in sustaining the objection to the introduction of O'Bannon's testimony, measurements, diagrams and photographs. This assignment of error is without merit.

V.

QUANTUM
By its last two assignments of error, Valley Electric urges that the jury abused its discretion in awarding excessive damages for the truck and the loss of its use. The jury awarded $18,000.00 to Hi-Tech for the damage to the truck. Valley Electric argues that the jury relied heavily upon the testimony of Jimmy Shell who stated that he purchased a replacement truck for that amount and that it failed to consider that the damaged truck was thirteen years old.
The thrust of Valley Electric's argument on appeal is that the testimony of O'Bannon, as the expert in valuing vehicles and vehicle salvage, should have been accorded greater weight than the testimony of Shell as to what it cost him to replace the truck. The trial judge instructed the jury to award reasonable damages and to award the lesser of the cost to replace or repair the truck. Apparently, the jury believed that the cost to replace the vehicle was less and that $18,000.00 was reasonable.
The jury has much discretion in the evaluation of the weight given to the testimony of expert witnesses. Grady Roper Drilling v. Transcontinental, 586 So.2d 707 (La.App. 3d Cir.1991), writ denied, 590 So.2d 592 (1992). The weight to be accorded to the testimony of experts depends largely on their qualifications and the facts on which they base their opinions. Durkee v. City of *1210 Shreveport, 587 So.2d 722 (La.App.2d Cir.), writ denied, 590 So.2d 68 (1991). In weighing expert opinions, the trier of fact should consider the education and experience of the expert in the particular science or field, the reasons given in support of the opinion, and the other evidence which supports or detracts therefrom. Whittle v. Miller Elec. Mfg. Co., 507 So.2d 266 (La.App. 3d Cir. 1987).
O'Bannon has never been to any school specifically dealing with valuation of vehicles, except one seminar ten to fifteen years ago. He has never written, published any articles or books in any periodicals dealing with valuation of vehicles, nor does he subscribe to any periodicals on that subject. O'Bannon testified that the only reference material he uses is the NADA, which does not show values for eighteen-wheelers. In this case, O'Bannon did not do any research at the library, and relied largely on his thirty-four years of experience as a claims adjuster. After he inspected the truck in the present case, he called two dealers and described the condition of the truck and asked them what it would cost to replace the truck. He did not get a written quote from the dealers. Basically, O'Bannon got another person's opinion of the price or value of the vehicle to which he assigned a value.
Our review of the record convinces us that the jury did not err in its award of damages for the truck and its loss of use. The last two assignments of error are without merit.

CONCLUSION
There has been no showing of error or abuse of discretion on the part of the trial court. Accordingly, for the above reasons, the judgment of the trial court is affirmed. All costs are assessed against defendant-appellant, Valley Electric Membership Corporation and its insurer, Federated Rural Electric Insurance Company, Inc.
AFFIRMED.
NOTES
[1] La.R.S. 32:141(B) reads:

B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.